Plaintiff is the holder of a check issued by the defendant to one Bidnick. In this action he seeks to recover of the defendant the amount of the check. By way of answer the defendant admits he issued the check in suit to Bidnick but pleads specially several defenses directed against the plaintiff's necessary status of a holder in due course. One such defense is to the effect that the check was issued to Bidnick upon the latter's false representations that he would complete certain *Page 14 
work, resulting in the defendant stopping payment thereon, thereby producing a defective title therein in Bidnick and through him in the plaintiff. Another defense is that the check was not presented for payment within a reasonable time, causing loss to the defendant. Another defense is that the check had been discharged. And still another defense is that Bidnick, when the holder of the check, renounced his rights therein against the defendant as maker.
The court will not spend time in discussing matters relating to burden of proof and other phases which invariably develop in a trial of a case of this character. It is sufficient to say that the only witnesses who gave testimony were the plaintiff and the defendant. Their testimony will be briefly noted so that the essential findings will be better understood.
Plaintiff testified that he is a building contractor in the Middletown area and that on December 18, 1950, a man known to him only as the foreman for Bidnick on a job being done by Bidnick for the plaintiff in the Middletown area asked him to cash the check in suit. The check was dated December 8, 1950, to the order of B. Bidnick in the amount of $457.60, was drawn upon the First National Bank in Greenwich, Connecticut, and purported to carry the defendant's name as maker. The top of the check had printed thereon in bold type the defendant's full name and occupation. On the reverse side appeared what purported to be Bidnick's indorsement. the plaintiff gave over in cash to the foreman the full amount of the check and took possession of it. On the following day he indorsed the check and cashed it at the Central National Bank and Trust Company of Middletown, Connecticut, where he and his partner had an account. On December 28, 1950, the Middletown bank notified the plaintiff that a stop payment order had been issued against the check *Page 15 
at the Greenwich bank and that it was charging his joint account with his partner for the money already paid him on the check.
Defendant testified that he is a building contractor in the Greenwich area and that in November, 1950, Bidnick had been doing some work for him as a sub-contractor but failed to complete the job. As an inducement to get Bidnick to resume the work, he did on December 8, 1950, issue to him the check in suit. Bidnick did not keep his word to complete the job. On December 14, 1950, as a reprisal, the defendant notified the Greenwich bank upon which the check was drawn to stop payment thereon. Between that date and January 4, 1951, Bidnick completed for the defendant the work he had previously stated but had left uncompleted. On the latter date the defendant issued to Bidnick his check as full payment in the total amount of $525.60. This check was intended to include, and did include, the sum of $457.60 represented by the check in suit, the additional amount being in payment of extra services. When the latter check was given over by the defendant to Bidnick, the defendant knew that the check in suit had been presented for payment by someone other than Bidnick, and, to use his expression, was "floating around." The defendant accepted Bidnick's statement that he would cause to be returned to him that check.
The question for decision is whether upon the pleadings and the evidence as a whole the plaintiff is entitled to recover of the defendant the amount of the check in suit. The action comes within the purview of the Negotiable Instruments Act of 1897, as contained in chapter 303 of the General Statutes. In the main §§ 6292, 6344, 6345, 6347, 6348, 6349, 6351 and 6478 are the ones having general relevancy to the decision in the case. *Page 16 
The court finds as a fact that the plaintiff gave over to Bidnick's foreman the full amount of the check on December 18, 1950, when he became the holder thereof. This was ten days after the check had been issued to Bidnick by the defendant. In the court's opinion two questions govern the decision and are deemed decisive of all issues. They are: (1) Did the plaintiff become the holder of the check "in good faith" within the meaning of § 6344(3) ? (2) Did the plaintiff present the check for payment "within a reasonable time after its issue" within the meaning of § 6478?
As to the first question, which relates to good faith:
Granting that the plaintiff might be considered negligent in not first ascertaining whether Bidnick's foreman was authorized by Bidnick to have the check cashed, in not ascertaining whether the purported indorsement of Bidnick was in fact his indorsement, and in not securing the indorsement of the foreman whose name he did not know, nevertheless these circumstances in themselves do not as a matter of law affect the plaintiff's position. "Suspicious circumstances sufficient to put a prudent man on inquiry and negligent failure to make such inquiry will not necessarily bar a recovery by the holder. The test is not whether the plaintiff was negligent in acquiring the paper but whether he acted in good faith. It is not the failure to inquire but the dishonest purpose which establishes bad faith." Hartford NationalBank Trust Co. v. Credenza, 119 Conn. 368,371: The check itself disclosed that it was drawn by a building contractor to a payee in the person of Bidnick whom the plaintiff had personal knowledge performed work for contractors. It did not occur to him that there was anything unusual about the circumstances. He neither knew nor had reason to know of Bidnick's breach of faith with the defendant. *Page 17 
For all that appears, Bidnick did instruct his foreman to do the very thing he did do, namely, have the plaintiff for whom he was doing work cash the check which bore his indorsement. The question is one of fact. Id., 372. As such it is resolved in the plaintiff's favor.
As to the second question, which relates to presentment for payment within a reasonable time after the check had been issued:
Long before the Negotiable Instruments Act was adopted, our Supreme Court of Errors recognized that what constitutes a reasonable time for the presentment of a check for payment by a holder so as to be effective against the maker is dependent upon the surrounding circumstances of the particular case. See Woodruff v. Plant, 41 Conn. 344, 347
(1874). Cases of other jurisdictions in which specific periods are considered are collected in the following notes: 13 L.R.A. 44, 23 A.L.R. 1205, A.L.R. Blue Book of Supplemental Decisions (Perm. Vol.) p. 249; A.L.R. Blue Book of Supplemental Decisions (1951) p. 51. A leading case on the general subject is Anderson v. Elem, 111 Kan. 713, 23 A.L.R. 1202. In that case recovery was permitted against the maker of a check in an action brought by an indorsee who had acquired it in good faith from the payee twenty-four days after it was issued. Payment had been stopped by the maker the day after the check was issued because of failure of consideration. It was held that the time elapsing between the issuing of the check and its negotiation did not deprive the plaintiff of the rights of a holder in due course.
Those cases in which holders of checks have been stringently limited in time from recovering against makers of checks on the ground of delay in presentment for payment invariably involve situations in which the drawee banks have failed subsequent to their issue. This is not the situation at bar. Nor *Page 18 
was it the situation in those cases appearing in the foregoing citations in which a more liberal time for presentment was permitted. The question is resolved in the plaintiff's favor.
The respective answers to the two questions deemed controlling of the decision in the case warrant the conclusion that the plaintiff should be accorded the full rights of a holder in due course in respect to the check in suit. Any damage resulting to the defendant was caused by his own slipshod method of doing business with Bidnick on January 4, 1951, and not by the plaintiff. Issuing his second check to Bidnick on that day, with knowledge that the check in suit was outstanding, was a precarious venture and, in the light of the outcome of this case, an expensive one. The stop payment order avails the defendant nothing in this case in so far as the plaintiff is concerned.
In view of the foregoing, the plaintiff is held entitled to recover of the defendant the amount of the check in suit with interest of 6 per cent per annum from December 28, 1950 (date of refusal of payment), to date of judgment. Principal indebtedness is $457.60, interest $32.25, total debt as damages $489.85.
 Judgment may enter as above stated, with taxable costs to the plaintiff as an incident. The industry and scholarship of both counsel deserve special commendation by the court.