JULIAN D. RAINEY *v.* H. C. GRIMMER

COURT OF COMMON PLEAS    NEW HAVEN COUNTY    FILE NO. 43688

Memorandum filed June 23, 1955.

*Ralph R. Rakosky,* of New London, for the plaintiff.

*Charles G. Albom* and *George G. Whitehead,* both of New Haven, for the defendant.

FITZGERALD, J.  Plaintiff is the holder of a check in the amount of $675 alleged to have been issued by the defendant to the order of "Cash" on February 21, 1950.  In this action he seeks to recover of the defendant the amount of the check with interest to date.  By way of answer the defendant pleads that he is without sufficient information regarding the allegations of the complaint and leaves the plaintiff to his proof; and, in addition, pleads two special defenses directed against the plaintiff's status of a holder in due course.  The first special defense is that he executed the check at Boston to a person or persons unknown to him and while under the influ-

ence of liquor and under threat of bodily harm; and the second is that the check was given in payment of a gambling debt.

Plaintiff's testimony may be summarized as follows: He is a Boston lawyer. On or about March 6, 1950, an acquaintance and client by the name of Warren Fisher came to his office. He had with him the check in question, drawn upon The Madison Trust Company of Madison, Connecticut. He wanted to reduce the check to cash but said he was finding difficulty in doing so in the absence of a known indorser. Plaintiff accepted the check and gave over to Fisher either $50 or $75 and credited the additional amount to legal services he had rendered and was to render in the future to a woman friend of Fisher's. Plaintiff then deposited the check in a Boston bank for collection and was later notified that a stop order on payment had been made by the defendant at the Madison bank.

Defendant's testimony, somewhat reminiscent of certain phases of that depressing movie of a decade ago called "The Lost Weekend," may be summarized as follows: He is a traveling salesman. He arrived at Boston on the late afternoon of February 20, 1950, and registered at a hotel. He met another traveling salesman by the name of Costello and the two compatriots started out on a spree. Somewhere around midnight everything went blank. Early the next morning the plaintiff returned to consciousness and found himself on the floor of a kitchen in a private dwelling. Several men, none of whom he recognized, were seated about a table on which there were dice. He was shown the check in question, fully made out and bearing his signature, and permitted to leave. He had no recollection of having made it out. Upon returning to his hotel, empty of pocket (all his money was gone), he telephoned the Madison bank upon which the check was drawn and

where he had an account and placed a stop order against payment of the check when presented.

The question for decision is whether the plaintiff is entitled to recover of the defendant the amount of the check in suit. Counsel are agreed that the law of Massachusetts and of Connecticut is uniform on the subject. Hence statutory reference is only made herein to the Negotiable Instruments Act of 1897, as contained in chapter 303 of the General Statutes, §§ 6292-6484.

Additional facts should be noted. Fisher, who gave the check over to the plaintiff nearly two weeks after its date of issuance, and whose name is indorsed thereon with that of the plaintiff, was an employee at a Boston night club. Defendant claims, and the court finds, that Fisher was unknown to him. Whether he was one of the men in the kitchen on the morning of February 21, 1950, cannot be determined. He was not in court as a witness.

To constitute the status of a holder in due course, the instrument must be taken by such holder under four enumerated conditions. Here the court is only concerned with the third of such conditions: that the plaintiff at bar took the check from Fisher "in good faith and for value." § 6344(3). Another statute is involved in the problem presented. Section 6351 reads, so far as is material: "Every holder is deemed prima facie to be a holder in due course; but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. . . ."

The court accepts as true the defendant's testimony of extreme intoxication. In short, the court finds proven this part of the allegation of the first special defense interposed by the defendant. The

second special defense is not sustainable on the limited evidence before the court. Because of the acceptance of a part of the first special defense as specified, the burden shifts back to the plaintiff to prove his status of a holder in due course under the statute. *Williams & Co.* v. *Wiltz,* 106 Conn. 147, 149.

Plaintiff's version of the circumstances under which he secured possession of the check from Fisher is bizarre. The only acceptable item in that version is that he probably paid over to Fisher $50 to $75. His account regarding legal services rendered and to be rendered a woman friend of Fisher's as further consideration, and his inability to break down such services on a "before and after" basis, cloaks the entire supposed episode in an aura of grave suspicion. "The consideration paid for the [check] is, however, a fact to be considered upon the question of good faith, and inadequacy of the consideration may, in connection with suspicious circumstances, justify a finding of bad faith." *Williams & Co.* v. *Wiltz,* supra, 150. At best the question is one of fact. *Hartford National Bank & Trust Co.* v. *Credenza,* 119 Conn. 368, 372. And as such it is resolved against the plaintiff. The reaching of a different result on this point by the trial court (*FitzGerald, J.*) in *Monarca* v. *O'Brien,* 18 Conn. Sup. 13, is explainable on the particular facts of that case.

Further discussion is not required.

Let judgment enter for the defendant.