LAUREL BANK AND TRUST COMPANY *v.*
PETER E. SAHADI

COURT OF COMMON PLEAS      GEOGRAPHICAL AREA No. 7
FILE No. CV 7-732-20771

Memorandum filed March 19, 1975

*Axelrod & Cheerman,* for the plaintiff.

*Ronald E. Cassidento,* for the defendant.

JACOBS, J. The major issue at controversy here is whether the defendant is liable to the plaintiff for the proceeds of a check which was deposited by the defendant and was later dishonored. It appears from the record that the defendant withdrew the proceeds of this check, which had been contingently credited to his account pending clearance, and that he has not reimbursed the plaintiff. After a careful inspection of the Connecticut law of commercial paper; General Statutes, title 42a, art. 3; as it applies to bank deposits and collections; id., art. 4; the court must hold that the plaintiff is entitled to recover the amount of $3950 plus interest accrued from the date of the defendant's closing of the account in question.

The court finds the following facts: On January 9, 1973, the defendant, as payee, endorsed a check from a Corrine Harper. The amount of the check was $3950, and it was drawn on the Valley Bank and Trust Company of Springfield, Massachusetts. The defendant presented this check to the plaintiff to be credited to his business checking account. The defendant deposited $3050 of this amount and received $900 in cash. The check was dishonored by the Valley Bank and Trust Company, and the plaintiff was apprised of that situation on January

11, 1973. No later than midnight of January 12, 1973, the defendant was notified by William Connell, then branch manager of the plaintiff's Cromwell branch where the defendant kept his account, that the check had been dishonored. The defendant's account was nevertheless credited with the deposited amount of $3050, and the defendant withdrew those funds, among others, in a series of transactions which culminated in his closing the account in March, 1973. The defendant has never reimbursed the plaintiff for the $900 in cash taken on January 9, 1973, or for the $3050 credited to his account on January 9, 1973, and withdrawn at a later date. The plaintiff bank did not deduct any amount from the defendant's account at any time to reimburse itself for its losses.

The defendant vigorously defends on two grounds. First, he alleges that the plaintiff neglected to prove that proper notice of dishonor was given in a timely fashion, as required by the "midnight deadline" rule of General Statutes § 42a-3-508 (2) and as defined in § 42a-4-104 (h). Second, the defendant contends that the plaintiff cannot maintain this action because it is no longer the "holder" of the instrument, since the plaintiff bank has admitted that the original instrument has been lost in the intervening period.

First, then, was the defendant given proper notice that the check had been dishonored? Second, can the plaintiff bank be said to be a "holder" of the dishonored check?

General Statutes § 42a-3-507 provides: "(1) An instrument is dishonored when (a) a necessary or optional presentment is duly made and due acceptance or payment is refused or cannot be obtained within the prescribed time or in case of bank collections the instrument is seasonably returned by

the midnight deadline as provided in section 42a-4-301; . . . ." For our purposes, the "presentment" occurred when the plaintiff presented the check in question to the Valley Bank and Trust Company for acceptance and payment. § 42a-3-504 (1). The Valley Bank and Trust Company refused to honor the check. In offering the check for presentment, the plaintiff was simply acting in the course of its business, as required by § 42a-4-202 (1) (a). But simply offering the check for presentment was not the full extent of the plaintiff's duty. After learning of the dishonor of the instrument, the plaintiff had the positive duty of notifying the defendant by midnight of the next full business day. Section 42a-3-508 provides: "(1) Notice of dishonor may be given to any person who may be liable on the instrument by or on behalf of the holder or any party who has himself received notice, or any other party who can be compelled to pay the instrument. . . . (2) Any necessary notice must be given by a bank before its midnight deadline . . . . (3) Notice may be given in any reasonable manner. It may be oral or written and in any terms which identify the instrument and state that it has been dishonored. . . ."

The defendant contends: "In the facts presented by the plaintiff, it is clear that the 'notice' was given a 'few days' after the check was returned. Since 42a-3-508 (2) is quite specific and definite, the court should find hard evidence of the 'midnight deadline notice' before a finding for the plaintiff." This assertion of the defendant fails to consider the testimony of the bank manager, William Connell. The trial transcript contains the following examination of Connell by the plaintiff's attorney. "Q.—Mr. Connell, when you received notice of this check being returned uncollectible, did you make any attempts to reach Mr. Sahadi? A.—Yes, I did.

Q.—And, do you recall when you tried to reach him?
A.—Yes, I did. It was the day that the check came back or the following day. I don't remember exactly what the date was. Q.—Okay, and how did you try to reach him; in what manner? A.—I called him on the phone. Q.—Did you speak with him? A.—Yes, I did. Q.—Could you relate to the court what you said to Mr. Sahadi? A.—I told him that the check that he had negotiated at the bank had been returned to us from the Springfield Bank because the account had been closed." The defendant did not offer any testimony concerning the notice or lack thereof, so on the basis of the testimony the court must hold that the notice of dishonor was given and that it was timely. Further, the oral method of notification adheres to the requirements of § 42a-3-508 (3). *Blue Ribbon Garage, Inc.* v. *Baldwin,* 91 Conn. 674 (oral notice of dishonor sufficient).

The defendant's second contention is that the plaintiff should not be entitled to recover unless it can prove it is the "holder" of the instrument. The defendant relies on the Uniform Commercial Code's definition of "holder" at General Statutes § 42a-1-201 (20), which is as follows: "[A] person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to bearer or in blank." Since the plaintiff is not in "possession" of the instrument at this time, the defendant reasons that the plaintiff should be denied recourse. The defendant seems to believe this argument dispositive, for in his brief he states: "The defendant concedes that if the plaintiff is a 'holder' of this instrument he is liable to the plaintiff."

The plaintiff did present evidence of the instrument at trial in the form of a photostatic copy of the lost instrument. This was admitted without

objection by the defendant and was stipulated to be an accurate copy. The plaintiff further offered the explanation that the original had been lost during the pendency of this action.

General Statutes § 42a-3-804 provides for lost, stolen, or destroyed instruments: "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument." See *American Finance Corporation* v. *Webb,* 23 Conn. Sup. 346, 348. In *Girard Trust Corn Exchange Bank* v. *Brink's Inc.,* 422 Pa. 48, the court allowed the bank to recover against Brink's for losing a bag of checks. In the instances where the bank could prove which items were missing and for what amounts, the bank was able to collect. The instance at hand is similar. A copy of the instrument was admitted into evidence, and it fairly and accurately described the transaction. Of course, it will always be assumed that the instrument itself is the best evidence, especially with regard to negotiable instruments. There is always the possibility of liability on the note if it has been acquired by another. But in this instance there does not seem to be any compelling reason not to accept the plaintiff's explanation of loss. Further, though the statute provides that security may be offered, the court does not believe that any is necessary here. The plaintiff maintains in the state considerable attachable assets which could be reached if this note should reappear. In essence, the defendant's argument that the plaintiff cannot be considered a holder because the check has been lost fails to account for § 42a-3-804 and cannot be a valid defense in this instance.

Let us now briefly analyze the legal basis for the plaintiff's claim, to see if the plaintiff has met its burden of proof. The commercial paper article and the bank deposits and collections article of the code are enormously complex in order to encompass the many ways in which value is transferred in our society. An extremely good and painstaking analysis of the law as it applies to this case can be found in Brady, Bank Checks (4th Ed.) pp. 345–94. See also Moore, Sussman & Corstvet, "Drawing against Uncollected Checks," 45 Yale L.J. 1, 260 (2 pts.); Beutel, "The Liability of 'Secondary Parties' under the Uniform Commercial Code: Drawers and Indorsers," 3 U.C.C.L.J. 301; Faulkner, "Holder in Due Course—A Primer for Defense Counsel," 45 Conn. B.J. 379; Comment, "Depositor Contests Right to Charge-Back Checks," 2 U.C.C.L.J. 279; O'Malley, "Common Check Frauds and the Uniform Commercial Code," 23 Rut. L. Rev. 189, 194 nn.33–35 (describing the techniques of split-deposit transactions, check kiting, and forgeries).

It is well settled that "[n]o person is liable on an instrument unless his signature appears thereon." General Statutes § 42a-3-401 (1). "Unless the instrument clearly indicates that a signature is made in some other capacity it is an endorsement." § 42a-3-402. The defendant signed the check in question, and this appears to satisfy the requirements of endorsement. Section 42a-3-414 (1) states: "[E]very endorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his endorsement to the holder . . . ." Section 42a-3-122 (3) provides: "A cause of action against a drawer of a draft or an endorser of any instrument accrues upon demand following dishonor of the instrument. Notice of dishonor is a demand."

Although the web of code provisions is woven loosely, the plaintiff in this case has assumed and proved its burden. First, the plaintiff alleged that it was the holder of the note. Though General Statutes § 42a-1-201 (20) defines a holder as one in possession, the plaintiff has shown it has the rights of recourse. The plaintiff obviously had the instrument in its possession at the time of the loss. At that specific time, the plaintiff's rights accrued following the defendant's refusal to reimburse the plaintiff for the dishonored check. The substance of this transaction is clear. The defendant attempted and is attempting to enrich himself at the expense of the plaintiff bank. The plaintiff satisfied the requirements of presentment, notice, and demand following the dishonor. §§ 42a-3-501 (1)–(3). The defendant did nothing, although it is clear from the statutes that it was never intended that the bank should suffer loss in such a case. To hold otherwise cannot be supported.

The plaintiff has been deprived of $3950 by the actions of the defendant. At the time of the dishonor, the plaintiff had the right of "charge-back" under General Statutes § 42a-4-212: "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor . . . to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer . . . ." The bank had the option of the charge-back, but it was evident from the fluctuations of the account that there was not enough to cover the dishonored check. The bank instead chose to proceed on the obligation of the defendant to reimburse it.

No evidence was offered or attempted to explain the defendant's actions. He had been duly placed on notice, and the court must presume that he understood that the $3950 was not his to keep. Defense counsel attempted at several points to cast doubt on the management practices of the bank in its discretion in handling this matter. But it seems as if the defendant was the beneficiary of these discretionary judgments at each juncture. The bank tried to allow him to return the money but instead finds itself in court two years later.

The law is clear. The defendant has not met his obligation, under General Statutes § 42a-3-414 (1), of reimbursement for dishonored instruments.

The court holds that the defendant owes the plaintiff the sum of $3950 plus accrued interest of 6 percent. General Statutes § 42a-3-122 (4) states: "Unless an instrument provides otherwise, interest runs at the rate provided by law for a judgment . . . (b) . . . from the date of accrual of the cause of action." Since there are serious questions concerning the manipulations of the account in question, for this purpose the court holds that the time of accrual of this action was the day on which the defendant closed his account with the plaintiff. See *Monarca* v. *O'Brien,* 18 Conn. Sup. 13.

Judgment may enter accordingly.