## Girard Trust Corn Exchange Bank, Appellant, *v.* Brink's, Inc., Appellant.

Argued January 7, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James W. Tracey, III,* with him *Wollman, Tracey and Schlesinger,* for plaintiff.

*James B. Doak,* with him *Roy L. Cameron, Jr.,* and *LaBrum and Doak,* for defendant.

OPINION BY MR. JUSTICE JONES, June 24, 1966:

On June 1, 1959, Girard Trust Corn Exchange Bank (Girard) and Brink's, Incorporated (Brink's) entered into a written contract[1] whereby Brink's agreed to furnish armored car service "for the purpose of handling mail, express and check shipments of [Girard] in Philadelphia, Pennsylvania." The third paragraph of the contract provided, inter alia: "It is expressly understood and agreed that the entire obligation of [Brink's] under this contract is to furnish an armored car, armed chauffeur and armed guard to [Girard] and [Brink's] is not to be liable for any loss occasioned in any manner whatsoever of any property carried by such car but that [Girard] expressly agree[s] to assume all liability for any such loss; except, however, that [Brink's] will be liable for any such loss arising from dishonesty or negligence of any such chauffeur or guard."

In the early morning of August 27, 1960, Girard placed in the vestibule of its main office at Broad and Chestnut Streets, along with other bags of checks for other Philadelphia banks, a bag of checks to be delivered to the Philadelphia National Bank by a Brink's armored car. This bag which had a Philadelphia National Bank tag on it contained checks with face amounts totalling $957,734.92.[2] A Brink's car came to

---

[1] The Federal Reserve Bank of Philadelphia and seven Philadelphia banks, including Girard, entered into this contract with Brink's.

[2] The face amounts of the checks can be divided into two categories: (1) checks in the face amount of $296.19 drawn on Girard

Girard that morning, picked up a number of bags and delivered them to their respective destinations. However, Philadelphia National Bank did not receive any bag from Girard. Despite the rapid discovery that the bag was missing, a search of the Girard premises proved fruitless. This bag of checks has never been recovered.

Girard undertook to determine which of its depositors had received credit for amounts represented by the approximately 6,000 checks which were in the missing bag. After ascertaining the identity of the depositors, Girard charged back all their accounts. Some of these depositors complained to Girard about the charge-back[3] and in response Girard re-credited their accounts in the total amount of $17,492.23. A breakdown of these re-credits and other items for which Girard is now suing Brink's reveals the following: Item (a) Girard files possessed written evidence that Girard depositors could not identify from the depositors' records the identity of the makers of the checks. The face amount of checks in this category was $7,374.29; Item (b) Girard files contained no records of any inquiry by Girard in regard to its depositors' identification of the makers of checks. The face amount of checks in this category was $10,117.94.[4] In addition to Items (a) and (b), Girard claims that Brink's should be liable for the loss of: Item (c) 64 checks drawn on Philadel-

which were being returned to Philadelphia National Bank because of insufficient funds in the Girard accounts and (2) checks in the face amount of $957,438.73 which were drawn on Philadelphia National Bank and being collected through Girard.

[3] The trial testimony reveals that these complaints were based on the depositors' failure to keep a record or to remember who were the makers of their checks. Many of the others who did not complain did remember the identity of the makers and secured another check.

[4] The total face amount of checks in Items (a) and (b) was $17,492.23.

phia National Bank and cashed at Girard of which photostats had been made but 23 such photostats were illegible and the other 41 photostats were lost. The face amount of checks in this category was $4,514.28. Item (d) checks, where all the parties were known and photostats available, drawn on Philadelphia National Bank for which payment had been refused at the request of Philadelphia National Bank's depositors. The face amount of checks in this category was $3,765.87. Girard also demanded: Item (e) that Brink's pay for the overtime expenditures incurred by Girard to investigate the loss (986 hours of overtime pay which amounted to $3,051.30); Item (f) a right to 6% interest as part of the damages, based on the period between January 2, 1962 and January 6, 1965, the date of the verdict in the court below.

The trial court sitting without a jury in this assumpsit action returned a verdict in favor of Girard for the sum of $25,057.81 which included $17,492.23 for the re-credits (Items a, b), $4,514.28 for the checks whose photostats were illegible or lost (Item c), and $3,051.30 for the overtime expenditures of Girard (Item e). Brink's excepted to this verdict and denied any liability for any of Items a, b, c and e. Girard also filed exceptions to the court's failure to award interest on the verdict (Item f), and failure to include as damages the $3,765.87 representing the photostats of checks where all parties were known for which payment had been refused at the direction of Philadelphia National Bank's depositors (Item d).

The trial court en banc dismissed both the exceptions of Brink's and of Girard and entered judgment on the findings on July 28, 1965. Both parties have appealed to this Court from the dismissal of their respective exceptions to the trial court's verdict.

Brink's first contends that there was not sufficient evidence presented to the trial court to warrant a find-

ing that Girard had *delivered* to Brink's a bag of checks bound for the Philadelphia National Bank on the morning of August 27, 1960. We disagree. While neither party could present direct evidence as to what did happen to the bag of checks in question, there was adequate circumstantial testimony on behalf of Girard to substantiate the trial court's finding of "a chain of events to support an inference of delivery" to Brink's. Brink's argument completely ignores the pointed conclusion of the trial court that the key witnesses for Brink's were not credible: "Although the guard and chauffeur who drove Brink's armored car on the morning of the disappearance testified that they did not receive a bag for Philadelphia National Bank, we find their testimony to be unworthy of belief." The trial judge's finding of delivery, which in this case carries the same weight as the verdict of a jury, (cf. *Pennsylvania Company for Insurance on Lives and Granting Annuities v. Wallace,* 346 Pa. 532, 535, 31 A. 2d 71) should not be overturned where it is supported by evidence in the record.

Brink's next asserts that, even assuming there was a delivery of the bag, the evidence before the trial court did not establish any negligence or dishonesty on the part of Brink's chauffeur or guard. The contract between the two parties, which states in part ". . . [Brink's] will be liable for any such loss arising from dishonesty or negligence of any such chauffeur or guard"—only declares who should be liable if such negligence occurs but it does not alter the burden of production of evidence to establish negligence in the bailor-bailee relationship. In the case of *Moss v. Bailey Sales & Service, Inc.,* 385 Pa. 547, 550, 551, 123 A. 2d 425 (1956) Mr. Justice (later Chief Justice) CHARLES ALVIN JONES set forth the relevant considerations: "A bailor makes out a prima facie case against his bailee for hire for the recovery of the value of unreturned

bailed property by showing his delivery of it to the bailee and the latter's failure to redeliver it upon the bailor's due demand therefor. It then becomes the bailee's duty, if he would escape responsibility for the loss of the bailed article, to show that his failure to redeliver it upon the termination of the bailment was because of its loss by fire, theft or other casualty free from fault on his own part."

In the case at bar, Brink's the bailee, has offered no explanation for the loss of the bag except for the allegation of nondelivery which we have already rejected above. Hence, Brink's has failed to meet its burden of production of evidence, and its guard and chauffeur must be adjudged negligent for not being able to account for the loss. *Moss v. Bailey Sales & Service, Inc.,* supra; *Schell v. Miller North Broad Storage Co.,* 142 Pa. Superior Ct. 293, 300, 16 A. 2d 680.

Brink's next two contentions, which can be grouped together, are that as to Items (a) and (b)[5] (checks totalling $17,492.23) Girard suffered no loss and that in recrediting the accounts of its depositors, Girard *voluntarily* imposed liability on itself which should preclude it from recovering from Brink's. At the heart of both of Brink's assertions is the assumption that, if Girard could not be held responsible for the loss by its depositors, then Girard should not be permitted to collect from Brink's. We believe this assumption is ill founded here. The underlying posture of this case as to Items (a) and (b) is that as between the makers of the checks, the depositors of Girard, Girard and Brink's, the makers of the checks in total amount of $17,492.23 should be ultimately charged for the amount lost. (Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §3-804, as amended, 12A P.S. §3-804) for other-

---

[5] See supra.

wise the makers would receive a windfall. However, that is impossible here because the makers of these checks are not known to the depositors.[6] Hence among the remaining three parties, Brink's, the party who was allegedly negligent in losing the bag should bear the liability in the absence of the discovery of the makers' identification. Girard, instead of putting the loss on its blameless depositors by charging back their accounts,[7] instead sued Brink's to ensure that Girard would not itself sustain the loss because of its inability to be paid by the payor bank, Philadelphia National Bank. The Uniform Commercial Code specifically provides (§4-212(5), 12A P.S. §4-212(5)) : "*A failure to charge back* or claim refund does not affect other rights of the bank against the customer *or any other party.*" (Emphasis added). The Pennsylvania Bar Association Notes on §4-212(5) declare that the "Right of charge-back is optional."

Thus, we believe that Girard had a choice under the Code whether to compensate for its failure to be

---

[6] Item (a) consists of checks where Girard has some *record* of the fact that the depositors do not know the makers of the checks. Girard has no such record for the checks included in Item (b) but the evidence at trial indicates that only those checks were re-credited to depositors' accounts where the depositor had complained of the charge back. In the light of the testimony, the complaints registered by these depositors were due to the depositors' failure to have a record or to remember the identity of the makers of their checks. For example, the following testimony was given by Mr. Walter Glasgow, Assistant Treasurer of Girard: "Q. Would you give His Honor an example of the type of complaints you received? A. We received telephone calls from customers who stated that they just don't keep a record of who gave them a check to actual threats of a law suit." Thus, we must assume that, for the purposes of this case, the makers of Item (b) checks were as unknown to the depositors as were Item (a) checks, even though Girard had no written evidence of any inquiry into Item (b) checks.

[7] Girard could have charged back these depositors' accounts under UCC, supra, §4-212(1), 12A P.S. §4-212(1).

reimbursed for the checks of Philadelphia National Bank by charging back Girard's depositors or by proceeding against Brink's for its alleged negligence. Cast in this light, Brink's contentions that Girard suffered no loss and gratuitously recredited the depositors' accounts are not on point. Girard merely exercised its option to hold Brink's liable rather than charge back its depositors.

Brink's objection to its being held liable for 64 checks drawn on Philadelphia National Bank and cashed at Girard for which photostats had been made but 23 of which were illegible and the other 41 of which were lost by Girard (Item (c)) has merit. Unlike the checks listed in Items (a) and (b), photostats of checks listed as Item (c) were available. Hence, if Girard had not lost or made the photostats illegible, Philadelphia National Bank would have made final settlement with Girard for the 64 photostats in the same way that final settlement was made for the other 4,239 lost checks cashed and photostated by Girard. The fact that the makers could not be identified as to the 64 Item (c) checks was specifically Girard's fault. Even though the loss of 64 out of 4,303 photostats of the checks that were cashed and then disappeared is small (approximately 1½%),[8] that should not cause Brink's to be held for Girard's failure to mitigate by producing these photostats which would have been otherwise available.

We disagree with the court below that Girard should not be able to collect from Brink's for those checks in Item (d). Girard has photostatic reproductions of these checks drawn on Philadelphia National Bank which Girard had cashed. The makers of the checks who were customers of Philadelphia National Bank instructed that bank not to accept the photo-

---

[8] There was testimony presented by Girard that a 1% or 2% loss factor in the photostating of cashed checks was normal.

static reproductions tendered by Girard. Under §4-212 (5), Girard had the choice of seeking a refund from the non-depositors who had cashed the checks at Girard, or sue the individual makers of the checks who were, of course, known in this instance, or sue Brink's who, in turn, could collect from the known makers. Girard elected to try to collect the amount in one action by suing Brink's, the party that caused Girard to rely on a photostatic copy in the first place.

The trial court correctly allowed Girard to recover from Brink's for the overtime paid to Girard's employees who were engaged in identifying the lost items (Item e). Girard would not have had to make these overtime payments had it not been for Brink's negligence in losing the bag. (Brink's admits that Girard had a duty to its depositors to trace these items.) The extra work performed was within the scope of the risk of Brink's act.

Finally, the trial court properly disallowed Girard any interest (Item (f)) on its award based on the period between January 2, 1962 and January 6, 1965, because the action, although in assumpsit, was in reality based upon a claim of Brink's negligence. ". . . in Pennsylvania, interest, as such, is not allowed in actions sounding in tort, when the damages sought to be recovered are unliquidated. [citing authorities].": *Klages v. Philadelphia & Reading Terminal Co.,* 160 Pa. 386, 388, 28 A. 862.

In summary, Girard may only recover from Brink's for Items (a), (b), (d) and (e) which represent a total sum of $24,309.40.

Judgment as modified affirmed.