**The NATIONAL SHAWMUT BANK OF BOSTON, Plaintiff,**

v.

**INTERNATIONAL YARN CORPORATION, Defendant.**

**The NATIONAL SHAWMUT BANK OF BOSTON, Plaintiff,**

v.

**MILL FACTORS CORPORATION, Defendant.**

**No. 69 Civ. 4095.**

United States District Court, S. D. New York.

July 14, 1970.

Otterbourg, Steindler, Houston & Rosen, New York City, for plaintiff.

Guzik & Boukstein, Weil, Gotshal & Manges, New York City, for defendants.

MOTLEY, District Judge.

These consolidated actions arise out of the sale of yarn by an Italian corporation, Novaceta, to the defendant in the first action, International Yarn Corporation (IYC), a Puerto Rican corporation with a principal place of business in Cleveland, Tennessee and an office in New York City. The defendant in the second action, Mill Factors Corporation (Mill), a New York corporation, guaranteed Novaceta prompt payment for the yarn by IYC.

The yarn was purchased by an IYC order dated May 22, 1968. The three guarantees (identical as to terms) are dated June 3, 13, and 27, 1968 and were all signed by Mill at its New York office. The yarn was delivered to IYC and received and accepted by it in accordance with its agreement with Novaceta. The purchase price of the yarn was $85,369.09. On October 1, 1968 Mill forwarded to IYC at its request the purchase price of the yarn. IYC issued its check to Novaceta on October 3, 1968 for the purchase price. The check was drawn by IYC on The Merchants Bank of Cleveland, Tennessee. It was received by Novaceta and deposited in its bank, Credito Italiano of Milan, Italy. On October 22, 1968, Credito Italiano, after having credited Novaceta's account, forwarded the check to the plaintiff in these actions, The National Shawmut Bank of Boston, for collection.

Plaintiff is a national banking association with its principal office in Boston, Massachusetts. It received the check on October 28, 1968. On the same day, plaintiff credited Credito Italiano's account and delivered the check in an envelope, containing 42 other checks, to the Federal Reserve Bank of Boston for collection through the Federal Reserve Bank of Nashville, Tennessee. On November 6, 1968, the Federal Reserve Bank of Boston reported to plaintiff that the envelope had not been received in Nashville and charged back plaintiff's account.

Plaintiff was unable to identify the checks in the envelope (because its microfilm records had been blurred) until December 24, 1968, at which time it requested a photocopy of the check in question from Credito Italiano.[1] The photocopy was received on January 5, 1969. Thereafter, on January 7, and 14, 1969, plaintiff advised IYC that the check had been lost in transit and requested IYC to instruct its bank to honor the photocopy. Plaintiff presented the photocopy to the Tennessee bank on which the check had been drawn with an indemnity to the bank and a guarantee of the validity of the photocopy and the endorsements. IYC stopped payment on the check on or about January 14, 1969. On January 28, 1969, IYC instructed its bank not to honor the photocopy of the check. The photocopy was not honored. The original check has not been found and has never been presented for payment.

At all times from the date of issuance of the check through March 31, 1969, IYC had sufficient funds in its account (except for December 9, 1968) at the Tennessee bank to cover the check. In February 1969, IYC advised Mill that the check had been lost, that IYC had the funds in the bank to cover the check, and requested instructions from Mill as to whether it should issue a new check

or honor the photocopy. Mill not only did not insist that IYC pay the check, but Mill refused to instruct or advise IYC. Plaintiff learned for the first time on or about March 13, 1969 of the existence of the guarantees by Mill. IYC became insolvent in March 1969.

Plaintiff tried unsuccessfully to charge back the loss to Credito Italiano and to Novaceta. It then obtained an assignment from Novaceta of all of its rights, without recourse, against IYC on March 28, 1969. Plaintiff then made demand for payment on Mill by letter dated April 14, 1969. Mill refused to pay. Plaintiff countered with this suit against Mill on May 6, 1969. Suit against IYC was not instituted until September 18, 1969. Plaintiff sues as the assignee of Novaceta in both actions for the purchase price. Jurisdiction in both cases is predicated wholly upon diversity of citizenship.

IYC answered on October 28, 1969 denying all allegations or pleading insufficient knowledge, except that it admitted purchase of the yarn for the amount stated.

Mill answered on June 16, 1969, and admitted the guarantees but set forth what it described as affirmative defenses (most of which are repetitious) as follows:

1) alleged assignment is a modification of alleged obligation between IYC and Novaceta made without knowledge, consent or ratification of Mill by reason of which modification Mill is discharged; 2) IYC delivered its check to Novaceta which plaintiff later came into possession of as agent or sub-agent for Novaceta and then negligently lost and which plaintiff, consequently, failed to present for payment; plaintiff is, therefore, estopped to deny, for purposes of this action, that IYC has not satisfied its obligation to Novaceta and, moreover, Mill materially altered its position in respect to IYC in November or De-

---

1. In order to identify the check, plaintiff had to analyze every entry of its receipts for collection outside of Boston to the extent of several hundred thousand entries for the day involved.

cember 1968 believing that IYC had paid its obligation to Novaceta; 3) by reason of plaintiff's negligence, plaintiff has waived any and all right it might have against Mill; 4) plaintiff's failure to present the check excuses Mill; 5) assignment was made after plaintiff discovered its negligence; plaintiff paid Novaceta the face amount of the check with knowledge that it was liable for its negligence to Novaceta; the assignment is an attempt to be subrogated to the rights of Novaceta against Mill; plaintiff's payment to Novaceta was voluntary and, therefore, plaintiff cannot claim any right of subrogation; 6) plaintiff has waived any right it may have as alleged assignee of Novaceta by reason of plaintiff's negligence; 7) Novaceta unreasonably failed to make timely demand upon IYC for payment and to notify Mill of IYC's failure to pay and, therefore, Novaceta is barred by its own laches and plaintiff has no greater right than Novaceta.

Plaintiff has moved for summary judgment in its favor against both defendants for $85,369.09. The court finds that there is no genuine issue as to any of the material facts set forth above and that plaintiff is entitled to judgment as a matter of law. There is no merit to any of Mill's defenses. The check was not lost by plaintiff. Although plaintiff was at fault because of its faulty microfilming, it was able to identify the maker of the check with reasonable promptness thereafter. Mill had knowledge in January and February 1969, before IYC became insolvent, that the check had not been paid. It's claim that Novaceta has been paid begs the question. The claim is also irrelevant unless the person paying Novaceta did so on behalf of IYC. The first question here is whether the check must be paid by IYC or, since it has been lost, whether the drawer can nevertheless be held liable on its obligation. If the answer is

yes, the next question is whether Novaceta could have assigned its right against Mill to plaintiff. The court concludes that an affirmative answer to both questions can be found in the Uniform Commercial Code (UCC) which has been adopted by both New York and Tennessee, the only jurisdictions whose contacts with the lost check are relevant for choice-of-law purposes.

Section 2-511(3) of the UCC provides: "Subject to the provisions of this Act on the effect of an instrument on an obligation (Section 3——802), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." [2]

Section 3-802(1) (b) provides:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation * * * (b) * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

"(2) The taking in good faith of a check which is not postdated does not of itself so extend the time on the original obligation as to discharge a surety." [3]

However, the check given by IYC for the yarn was lost after plaintiff had taken steps to present the check for payment to the Tennessee bank. The check, consequently, has never been presented to the bank in Tennessee. More importantly, the check has never been paid, as a result of which IYC has never discharged its obligation under its contract of sale with Novaceta. IYC's obligation to pay, however, remains suspended only until the remedy provided by the UCC for a lost check has been successfully invoked.

2. McKinney's Consolidated Laws of New York, Vol. 62½ § 2-511(3) (1964); Tennessee Code Annotated, Vol. 8A, § 47-2-511(3) (1964).

3. *Id.* § 3-802(1) (b) and (2); § 47-3-802(1) (b) and (2).

Section 3–804 of the UCC provides a remedy for the predicament in which plaintiff finds itself. That section provides: "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms."

■ Upon this motion for summary judgment, a review of the entire record discloses due proof of plaintiff's ownership of the instrument by virtue of the fact that plaintiff credited the account of Credito Italiano which had credited the account of Novaceta. *See* Chase Manhattan Bank v. Concord Utilities Corp., 7 UCC Rep. 52 (1969); *accord,* Girard Trust Corn Exchange Bank v. Brink's, 422 Pa. 48, 220 A.2d 827 (1966). The record also establishes the facts which prevent plaintiff's production of the instrument, and establishes the terms of the instrument. Plaintiff, therefore, succeeds on his cause of action against IYC as the owner of a lost check.

■ IYC admits that it has not parted with any money on its obligation to Novaceta. There has never been any payment made on behalf of IYC to Novaceta by plaintiff or Credito Italiano or anyone else so as to discharge IYC on the instrument or the underlying obligation. Cf. Gusikoff v. Republic Storage Co., Inc., 241 App.Div. 889, 272 N.Y.S. 77 (2d Dept. 1934). When IYC paid by check, its obligation was merely suspended until presentment of the check or a successful suit under § 3–804. Its obligation was plainly not discharged when it paid by check. Since IYC had not discharged its obligation to Novaceta, the latter had a cause of action against IYC and Mill which it could assign. The UCC § 2–210(2) provides for assign-

ment of an assignor's right arising out of the assignor's due performance of his entire obligation despite agreement otherwise.[4] Here there was no agreement not to assign. Novaceta fully discharged its obligation and, therefore, could assign its rights against Mill to plaintiff. *See* Shapiro Bros. Factors Corp. v. Guy Hobbs, 5 UCC Rep. 518 (1968).

■■ However, the New York UCC § 3–804 varies the UCC provision for suit on a lost check by requiring security in an amount not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendants, their heirs, etc., by reason of further claims on the instrument.[5] The Tennessee provision leaves such indemnity optional.[6] The court resolves the conflict in favor of Tennessee law. The lost instrument is a check drawn by IYC, a Puerto Rican corporation, on a Tennessee bank. The check was thus payable in Tennessee. The check was in payment of goods shipped to Tennessee. IYC has a factory and principal place of business in Tennessee. Plaintiff, a Massachusetts corporation, was in the process of presenting the instrument to the Cleveland, Tennessee bank for payment when the check was lost. Tennessee, therefore, has the most significant contacts with the lost check and, consequently, Tennessee law should be applied. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954). Applying Tennessee law, the court notes that it requires plaintiff to provide the same security which was required by the New York City Civil Court in December, 1969, in like circumstances, in Chase Manhattan Bank v. Concord Utilities Corp., *supra.* There the court ruled that since plaintiff was a banking institution, a letter of indemnity would suffice. *See* also Draftsmen's Comment regarding security under § 3–804 in UCC Rep., Uniform Code.

---

4. *Id.* § 2–210(2); § 47–2–210(2).

5. McKinney's Consolidated Laws of New York, Vol. 62½ § 3–804 (1964).

6. Tennessee Code Annotated, Vol. 8A, § 47–3–804 (1964).

The plaintiff's motion for summary judgment in the amount of $85,369.09 is granted against both defendants on condition that a letter of indemnity is first furnished both defendants and The Merchants Bank.

Submit order on notice.