**CONTRACTOR UTILITY SALES CO., INC., Plaintiff-Appellee-Appellant,**

v.

**CERTAIN–TEED CORPORATION, Defendant-Appellant-Appellee.**

Nos. 83–2278, 83–2366.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1984.

Decided Nov. 9, 1984.

Rehearing and Rehearing En Banc Denied Dec. 13, 1984.

Certiorari Denied March 4, 1985. See 105 S.Ct. 1397.

Thomas F. Londrigan, Londrigan & Potter, Springfield, Ill., for plaintiff-appellee-appellant.

Geoffrey G. Gilbert, Chicago, Ill., for defendant-appellant-appellee.

Before PELL and COFFEY, Circuit Judges, and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

Following lengthy and vigorously contested litigation, including a previous appearance before this Court,[1] plaintiff won a jury verdict of $802,000.00 compensatory and $3,000,000.00 punitive damages. Both parties appeal. We affirm. The basic facts are that defendant wished to replace plaintiff as an intermediary in selling defendant's polyvinylchloride pipe (PVCP) to contractors and to make direct sales to such customers. To accomplish this defendant (pursuant to its powers under its contract with plaintiff) obliged plaintiff to quote higher prices than defendant offered, after assuring plaintiff that it would be permitted to quote competitive prices. The trial judge moulded the verdict so as to award a single sum as compensatory damages, although separate claims had been submitted to the jury on breach of contract and fraud theories arising out of the same transactions. Defendant argues on appeal a variety of evidentiary and credibility issues, emphasizing inconsistencies in plaintiff's testimony, but we find that the jury's determination, under proper instructions, has resolved these questions and should not be disturbed.

For a full explanation of the course of the litigation it will be necessary to follow "a long, long trail a-winding" into the history of the relations and negotiations between the parties.

Plaintiff had been a distributor for defendant from 1965 to 1972, but then got a better deal from Robintech, a competitor. Later defendant found it needed the market share controlled by plaintiff, and plaintiff was displeased by Robintech's actions. Negotiations for takeover of plaintiff by defendant proved abortive.[2]

Then on September 2, 1975, the parties at defendant's corporate headquarters at Valley Forge, Pennsylvania, entered into the contract involved in the case at bar.[3] Disharmony soon arose, however. In the fall of 1976 Ray Blankenship, a friend of plaintiff's president Roy Lance, left Certain-Teed for Robintech, and plaintiff clandestinely sold Robintech pipe. In May 1977 plaintiff held back over a million dollars it had collected as agent for defendant, and defendant terminated the 1975 contract with plaintiff on May 31, 1977. It would have expired by its own terms on December 31, 1978.[4]

---

* The Hon. Edward Dumbauld, U.S. Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. *Contractor Utility Sales Co. Inc. v. Certain-Teed Product Corp.*, 638 F.2d 1061 (7th Cir.1981).

2. Executives of defendant reasoned: "Why buy the cow if we can get the milk for nothing" by signing up plaintiff as an agent? The history of the parties' dealings and prior course of the litigation is fully described in 638 F.2d at 1067–71 and need be summarized only briefly here.

3. Hence Pennsylvania law is accepted as governing by the parties and this Court, 638 F.2d at 1080, n. 23.

4. The trial court thus properly allowed damages up through December 31, 1978, as that date ended the period when plaintiff under the contract had the right to sell defendant's products.

■ The contract of September 2, 1975 contained the customary integration clause, and also (without making any reference to a duty to ensure the "competitiveness" of prices) gave defendant the power to set prices. Defendant argues vigorously that the written contract does not mention the topic of competitiveness. But it seems clear that such omission is naturally to be expected in order to conform with the requirements of *U.S. v. General Electric Co.*, 272 U.S. 476, 484, 47 S.Ct. 192, 194, 71 L.Ed. 362 (1926), regarding the establishment of a genuine agency.[5] And the jury was expressly instructed that evidence of the oral promise that prices set by defendant would be competitive should be considered only with respect to the fraud and unfair dealing aspects of the case, as distinguished from interpretation of the integrated written contract.[6]

■ The leading Pennsylvania case on the parol evidence rule (a doctrine strenuously argued by defendant) is *Gianni v. Russell & Co. Inc.*, 281 Pa. 320, 323–24, 126 A. 791 (1924), which has been often cited and followed. See, *e.g., United Refining Co. v. Jenkins*, 410 Pa. 126, 134, 189 A.2d 574 (1963); *Dunn v. Orloff,* 420 Pa. 492, 495–96, 218 A.2d 314 (1966). However, the integration rule yields to a properly established demonstration of fraud inducing and vitiating the execution of the written agreement. *Brentwater Homes v. Weibley*, 471 Pa. 17, 23, 369 A.2d 1172 (1977).

■ In order to establish fraud, Pennsylvania, as many States do, requires proof of (1) false or fraudulent representation; (2) which defendant knew, or ought to have known, was false; (3) which is intended to be acted upon by plaintiff; (4) which in fact was acted upon and justifiably relied upon by plaintiff; (5) to his detriment. *Emery v. Third National Bank*, 314 Pa. 544, 548, 171 A. 881 (1934); *Neuman v. Corn Exchange Bank*, 356 Pa. 442, 450 (1947); *Lake v. Thompson*, 366 Pa. 352, 356, 77 A.2d 364 (1951); *Scaife Co. v. Rockwell-Standard Co.*, 446 Pa. 280, 285, 285 A.2d 451 (1971); *Weibley, supra,* 471 Pa. at 23, 369 A.2d 1172; *Delehanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1251–52 (1983). It is clear that under Pennsylvania law "A statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of a fact." 471 Pa. at 23, 369 A.2d 1172; *Watercolor Group v. Newbauer*, 468 Pa. 103, 115–16, 360 A.2d 200 (1976). As Bowen, L.J. observed long ago in *Edgington v. Fitzmaurice*, 29 Ch.Div. 459, 483 (1885): "The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind, at a particular time, is, but if it can be ascertained it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is, therefore, a misrepresentation of a fact." Such is likewise the law of Pennsylvania.

■ The jury in the case at bar was likewise instructed that proof of fraud must be "clear, precise and convincing." This instruction comports with the law of Pennsylvania, where "It is well settled that fraud must be proved by clear and convincing evidence." *Wagner v. Somerset Co. Memorial Park*, 372 Pa. 338, 341, 93 A.2d 440 (1943); *Gerfin v. Colonial Smelting & Refining Co.*, 374 Pa. 66, 67, 97 A.2d 71

5. In Certain-Teed's "Strategic Plan," developed by William Krifsky and dated July 22, 1975, to increase market share by direct selling at the expense of independent agents, it is said: "The key to transitioning to a more flexible marketing approach emphasizing direct Certain-Teed sales as opposed to 'agents' turns out to be, paradoxically, changing our so-called agents to true agent status." [Plaintiff's Appendix, 48–49]. In view of this situation the defendant's argument based upon the parol evidence rule and the integration clause loses strength, and plaintiff's case establishes "fraud in the factum."

6. The theory of breach of an implied obligation to deal fairly and in good faith with the other contracting party (which remained in the case for retrial on remand, 638 F.2d at 1081) is in substance a metamorphosis of the fraud claim, and the trial judge appropriately eliminated duplication of damages in the verdict.

(1953).[7] This test was met by plaintiff's testimony at the first trial and also at the second. Issues as to inconsistencies, conflicts, and credibility are for resolution by the jury.

■ With respect to evidentiary rulings, the trial court did not abuse its discretion. "We will reverse the court's ruling on the admissibility of expert testimony only upon a clear showing of abuse of discretion." *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1241 (7th Cir.1982). This court on the prior appeal left to the trial court the question whether the testimony of plaintiff's expert Dr. Roger Kormendi was admissible to prove damages (638 F.2d at 1085 n. 32). Judge Baker had excluded it at the first trial as too speculative, and Judge Morgan at a pretrial on remand had reached the same conclusion. Judge Mihm adhered to that ruling, but permitted plaintiff, which would otherwise have had no proof of damages, to introduce calculations based on comparable sales by Robintech during the period of time involved. This type of evidence of sales in the same market of the same product, under the circumstances, seems acceptable as a reasonable approximation of the amount of damages when the fact of damage is established but the precise amount is not ascertainable with certainty. *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1242 (7th Cir.1982); *Darlington v. Bucks Co. Pub. Svce. Co.*, 303 Pa. 288, 293, 154 A. 501 (1931); *Hahn v. Andrews*, 182 Pa.Super. 338, 345, 126 A.2d 519 (1956); *Macan v. Scandinavia Belting Co.*, 264 Pa. 384, 392–93, 107 A. 750 (1919); *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 291 n. 5, 285 A.2d 451 (1971). The liberal attitude of Pennsylvania courts on this issue is shown by a recent Superior Court case, *Delehanty v. First Pennsylvania Bank*, 464 A.2d 1243, 1257–1261 (1983).[8] This accords with decisions of this Court. *Canada Dry Corp. v. Nehi Beverage Co., Inc.*, 723 F.2d 512, 522–23 (7th Cir.1983); *Hannigan v. Sears, Roebuck & Co.*, 410 F.2d 285, 293 (7th Cir.1969); *B. Constantino & Sons Co. v. New Amsterdam Casualty Co.*, 234 F.2d 902, 903–904 (7th Cir.1956).

■ Plaintiff also assails the evidentiary rulings of the trial court, in excluding the expert's testimony and defendant's internal projections as speculative. But we are disinclined to overrule the discretion of the trial court in a matter where considerable uncertainty is inherent in the estimation of future probabilities, and the trial court can better assess the reliability of the witnesses and the data and procedures they employ. This is particularly true in the case at bar, where the volatile fluctuations of the pipe market are plainly shown by the price levels of PVC pipe in consecutive years, which varied widely in accordance with the vicissitudes of OPEC control over oil prices. We shall sustain the trial judge's rulings, which though assailed by both plaintiff and defendant, were fair and reasonable, and worked no injustice to either party.

The most troublesome questions presented on this appeal relate to the award of

---

**7.** Another familiar formulation of the standard is that "Evidence of fraud must be 'clear, precise, and indubitable' and the question of determining whether evidence presented is of that quality is a question of law. [citing Gerfin]. Where, however, the evidence meets this standard, it is for the jury to determine which evidence is true." *Highmont Music Corp. v. J.M. Hoffmann Co.*, 397 Pa. 345, 350, 155 A.2d 363 (1959). See also *Ratay v. Lincoln Natl. Life Ins. Co.*, 378 F.2d 209, 212 (3d Cir.1967); *Weibley, supra*, 471 Pa. at 23, 369 A.2d 1172; *Scaife,*

*supra*, 446 Pa. at 285, 285 A.2d 451; *Delehanty, supra*, 464 A.2d at 1252–53.

**8.** The problems of a "new business" or "loss of good will" by speculative loss of future business by reason of defective quality product do not arise in the case at bar. Cf. *Harry Rubin & Sons v. Consolidated Pipe Co.*, 396 Pa. 506, 513, 153 A.2d 472 (1959). Plaintiff's was a valuable and well established business, as was recognized at the time of the acquisition negotiations. See also *Pugh v. Holmes*, 486 Pa. 272, 297, 405 A.2d 897 (1979).

punitive damages and of "pre-judgment interest" [9] under Pennsylvania law.

 However, it is clear that punitive damages are not a mere automatic incident of victory in proving a defendant's wrongful action; there must be something aggravated and outrageous about the conduct, calling for a remedy which will both punish the wrongdoer and deter others from like transgressions. To ensure that the penalizing monetary exaction will have a painful effect on the wrongdoer, it is permissible to show the financial condition or wealth of the defendant.

 Nevertheless it is clear that in Pennsylvania, contrary to the rule in Illinois [*Hannigan v. Sears Roebuck & Co.*, 410 F.2d 285, 294 (7th Cir.1969)] punitive damages must be proportional to the compensatory damages, and bear a reasonable relation thereto. *Hughes v. Babcock*, 349 Pa. 475, 481, 37 A.2d 551 (1944); *Givens v. W.J. Gilmore Drug Store*, 337 Pa. 278, 285, 10 A.2d 12 (1940); *Chambers v. Montgomery*, 411 Pa. 339, 344–45, 192 A.2d 355 (1963); *Delehanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1262–66 (1983).[10] There can be no punitive damages if there are not compensatory damages. *Hilbert v. Roth*, 395 Pa. 270, 276, 149 A.2d 648 (1959).

In view of the familiar triple damages in anti-trust cases, there seemed some doubt as to whether the punitive damages here were excessive. In *Voltz v. General Motors Acceptance Corporation*, 332 Pa. 141, 145, 2 A.2d 697 (1938), an award of $2500 punitive damages was reduced to $1000 where the compensatory damages were $800. In *Givens, supra*, 337 Pa. at 285, 10 A.2d 12, it was said that in *Voltz* "punitive

damages more than treble the actual damages, were declared excessive."

 But later cases indicate that there is no fixed ratio which must be maintained. In the *First Pennsylvania Bank* a proportion of 11 to 1 was sustained. In *Chuy v. Philadelphia Eagles*, 595 F.2d 1265, 1279 (3rd Cir.1979) a ratio of 6 to 1 was upheld. In view of all the circumstances we are unable to say that the figures in the case at bar are not in conformity with current Pennsylvania law.

 We turn now to the question of pre-judgment interest. We begin by noting that "it is now the settled law in this Commonwealth that interest, as such, is not allowed in tort actions when the damages sought to be recovered are unliquidated." However, an exception to this rule is made in cases where the tort remedy consists in compensation for the destruction of property (as by fire) and it is possible to measure the amount of compensation by market value, or other definite standards.[11] *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 74, 263 A.2d 336 (1970). See also *Girard Trust Corn Exchange Bank v. Brink's Inc.*, 422 Pa. 48, 57, 220 A.2d 827 (1966).

 For breach of contract the rule *certum est quod reddi potest* set forth in Restatement, Contracts § 337(a) is also the law of Pennsylvania. *Penneys v. Penna. R.R. Co.*, 408 Pa. 276, 279, 183 A.2d 544 (1962). The legal rate of interest is allowed in contract cases. *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 292–95 (3rd Cir.1981).[12] In that case the Third Circuit held that mere extortionate detention of

---

**9.** As stated by Judge Arlin Adams in *Peterson v. Crown Financial Corp.*, 661 F.2d 287, 293 (3rd Cir.1981), "The law of Pennsylvania with respect to the rate of pre-judgment interest is far from perspicuous."

**10.** In *Delehanty*, when the court reduced compensatory damages from $70,000 to $40,000, it made a corresponding reduction of the punitive damages from $750,000 to $440,000. 464 A.2d at 1266.

**11.** This compensation is not interest *eo nomine* or as a matter of right, but is compensation for

delay, and discretionary, depending on the fault of the party causing the delay. *Hussey Metals Div. v. Lektromelt Furnace Div.*, 417 F.Supp. 964, 967 (W.D.Pa.1976). See also *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3rd Cir.1982); and *Peterson v. Crown Finance Corp.*, 661 F.2d 287, 294 (3rd Cir.1981).

**12.** The holding in this case is an application of *Sack v. Feinman*, 489 Pa. 152, 165–66, 413 A.2d 1059 (1980).

money by a financial institution did not fall within Restatement § 337(a) but that the remedy was in the nature of equitable restitution of money unjustly received and that the court has discretion to award interest at a rate higher than the legal rate.

As Judge Aldisert explained in *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056–57 (3rd Cir.1982), the award under § 337(a) is properly described as "pre-judgment interest" but the award under the *Marrazzo* rationale is "damages for delay." In personal injury cases no damages for delay are recoverable, since the damages are not assessed until the date of trial. *Ibid.*, at 1056 n. 4.

Since the rate of "damages for delay" and "true prejudgment interest" are both measured at the legal rate of 6% it is immaterial whether the case at bar is treated as a tort or contract action.

It remains, however, to consider the effect of Pennsylvania Rules of Civil Procedure Rule 238. If applicable by its terms, this rule must be followed by federal courts as "outcome-determinative" under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This was decided in *Jarvis v. Johnson*, 668 F.2d 740, 744–45 (3rd Cir.1982). Paradoxically, the constitutionality of the Supreme Court's power to enact the rule was justified on the basis that it was procedural rather than substantive, and that its purpose was to encourage early settlement of cases (thus depriving insurance companies of the "float" on reserves for pending litigation and getting the money sooner to the injured plaintiffs).[13]

Under Rule 238 "damages for delay at ten (10) per cent per annum, not compound-ed" shall be added "to the amount of compensatory damages," but only in actions "seeking monetary relief for bodily injury, death or property damage, or any combination thereof."

In light of the legislative purpose we do not feel justified, in the absence of Pennsylvania decisions on the point, to accept plaintiff's argument that the words "property damage" in the Rule include the decline of plaintiff's profits from sales of PVC pipe by reason of defendant's machinations. We consider it more probable that the rule contemplates motor vehicle collisions, where "bodily injury, death or property damage" are often likely to occur in the same tort litigation.[14] This interpretation is strengthened by the fact that Rule 238 applies only to tort cases, not contract cases. *Reliance Universal Inc. v. Ernest Renda Contracting Co.*, 308 Pa.Super. 98, 107, 454 A.2d 39 (1982).[15]

Plaintiff's interpretation would seem to be a novel form of the now discredited dogma of "liberty of contract" as a property right. Roscoe Pound, *Jurisprudence* (1959) I, 95–96, 425. As Justice Holmes remarked on this subject: "By calling a business 'property' you make it seem like land ... An established business no doubt may have pecuniary value and commonly is protected by law against various unjustified injuries. But you cannot give it definiteness of contour by calling it a thing. It is a course of conduct...." *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 133, 66 L.Ed. 254 (1921).

We conclude that neither Rule 238 nor the *Marrazzo* exception to the general principle of denying prejudgment damages in case of unliquidated tort claims can be

---

**13.** *Laudenberger v. Port Authority*, 496 Pa. 52, 59, 71, 436 A.2d 147 (1981). The Supreme Court is empowered by Pa. Const. art. V § 10(c) to "prescribe general rules governing practice, procedure, and the conduct of all courts ... if such rules ... neither abridge nor modify the substantive rights of any litigant ..."

**14.** Property damage claims are ordinarily handled by arbitration among the insurance carriers rather than litigated in court.

**15.** The terms of Rule 238 might embrace real estate or tangible property within the *Marrazzo* rule, *supra*, but according to the opinion of Judge Aldisert (a former Common Pleas Judge) in *Wicaco*, *supra*, "Although there are no Pennsylvania cases on point it also seems to us that there can be no duplication of common law damages for delay, and Rule 238 damages for the period between the filing of the complaint and the judgment." 686 F.2d at 1057.

applied to augment the compensatory damages awarded to plaintiff by the jury.[16]

Likewise we can discover no current Pennsylvania authority for translating the amounts of damages awarded for ancient torts into currently depreciated dollars.

Accordingly, the judgment of the District Court is

*Affirmed.*

---

**16.** And of course the punitive portion of the damage award can not be augmented under Rule 238. *Colodonato v. Conrail,* 307 Pa.Super. 478, 480, 453 A.2d 987 (1982), affirmed by the Supreme Court December 30, 1983.