Philco Corporation, Appellant, *v.* Sunstein.

Argued January 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Francis DeLone,* with him *Norma L. Shapiro, Herbert Epstein,* and *Dechert, Price & Rhoads,* for appellant.

*Franklin Poul,* with him *William F. Fox,* and *Fox, Differ, Di Giacomo & Lowe,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE COHEN, April 24, 1968:

This is an appeal from an order staying proceedings in the court below on appellant's cause of action until the completion of proceedings in a separate action pending before the United States District Court for the Eastern District of Pennsylvania, or until further order of the court below.

On December 9, 1959, appellant instituted this action in equity seeking to establish, inter alia, ownership rights in certain inventions allegedly devised by appellee, Sunstein, while in the course of his employment with appellant. The complaint also seeks a mandatory injunction against appellee, General Atronics Corporation, to restrain it from making further use of inventions devised and rightfully owned by Philco. After extensive discovery by all parties concerned, and after settlement negotiations collapsed, Sunstein commenced an antitrust action in the federal courts alleging that "Philco and RCA individually and with others" unlawfully conspired to prevent him from exploiting inventions to which he asserts ownership.

In May, 1967, after appellant filed its praecipe to list the case for trial, Sunstein filed a petition to stay all proceedings pending the determination of the federal court action. After argument on the petition, the court below ordered a stay of the proceedings and this appeal followed.

Appellees initially argue that the appeal should be quashed. We disagree. While it is true that we in-

dicated in *Reynolds Metals Company v. Berger,* 423 Pa. 360, 223 A. 2d 855 (1966), that orders staying proceedings to await the termination of related proceedings in another court are generally interlocutory in nature, our decision in *Reynolds* should not be viewed as a blanket rule without exception to be applied in all cases involving stay orders.[1]  Whether or not a stay order should be considered final for appeal purposes depends to a large extent upon the practical effect and impact the stay order might have on the relief requested by the litigants.  If the effect of the stay order is tantamount to a dismissal of the cause of action or amounts to a permanent denial of relief requested, the party aggrieved should undoubtedly be afforded the opportunity to appeal on the basis that such stay order is a final disposition of some, if not all, of the rights involved.[2]

---

[1] In *Reynolds* we were not confronted with a situation wherein the nature of the relief sought to be obtained would be substantially diminished in value as a result of the issuance of the stay order.  No rights were being lost because of the delay in adjudicating the rights and liabilities of the parties.  Likewise, there was an extremely short period of time between the filing of the cause of action in the federal court and the filing of the cause of action in the common pleas court.  Moreover, *Reynolds* had filed a compulsory counterclaim in the federal court action which embodied the same cause of action pleaded in the Commonwealth court, virtually guaranteeing that all of the issues involved in the litigation could and would be resolved in the federal court proceedings *without* any apparent *prejudice* to the parties.

[2] A classic example of a stay order which could in no way be considered interlocutory is in the restrictive employment contract area.  The following hypothetical situation will serve to illustrate that under certain facts and circumstances a stay order would be sufficiently final for appeal purposes:  Assume an employer and employee enter into a contractual arrangement wherein the employee covenants that in the event his employment is terminated, he will refrain from competing with his employer for a period of one year.  The employee breaches the contract by competing within the time period proscribed and the employer in an effort to

Therefore, a consideration of the practical effects of the stay order on appellant's cause of action is an essential prerequisite in determining whether the order appealed from is interlocutory. Here the practical effect of staying the proceedings in the court below pending the future disposition of another related case in the federal courts is to work a severe hardship on appellant. Since the life of the patents to which appellant claims ownership will expire after seventeen years from the date of their grant, valuable rights are being constantly diminished each and every day this case continues without a final adjudication. See 35 U.S.C. §154 (1952), as amended, 35 U.S.C. §154 (Supp. 1965). To the extent valuable rights are being denied as a result of the order staying the proceedings in the court below, the order appealed from must be considered final.

Turning to the merits of the case, appellant argues that the court below abused its discretion by staying the proceedings pending the outcome of the federal

compel compliance commences an action in equity seeking to enjoin the employee from competing. The employee then files a claim in the federal court alleging an antitrust violation by the employer and thereafter requests the Commonwealth court to stay its proceedings pending the outcome of the federal court action. The Commonwealth court grants the stay and the employer appeals. Is the stay order sufficiently final for appeal purposes? The answer to this question must be in the affirmative, since the issuance of the stay order obviously would deprive the employer the injunctive relief he seeks in the Commonwealth court action. The issuance of a stay order under such circumstances would be tantamount to a dismissal of at least part of the employer's cause of action, and to that extent the stay order would be final. While the case at bar differs from the restrictive employment hypothetical, it nevertheless presents an analogous situation in that here appellant is also being deprived of substantial valuable rights as a result of the issuance of the stay order. This deprivation in our view renders the stay order final insofar as appellant's right of appeal is concerned.

court action. We agree. It is inconceivable that litigation which has been pending in the Commonwealth courts for a period in excess of eight years can be brushed aside merely because one of the parties decides eight years hence to commence an antitrust action in the federal courts, which action may or may not finally dispose of all of the issues raised in the Commonwealth action. If we were to permit the stay order to remain under these facts and circumstances, it would serve only to create another vehicle by which parties could easily delay the adjudication of a case indefinitely. Since appellant's action in the court below is now after eight years ripe for adjudication, and since further delay would substantially impair the value of the rights sought to be determined, we cannot sanction the issuance of the stay order by the court below.

Order reversed and the case remanded to the court below for further action consistent with this opinion.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority today attempts to establish an exception to *Reynolds Metals Co. v. Berger,* 423 Pa. 360, 223 A. 2d 855 (1966). This Court in *Reynolds* quashed an appeal from a stay order of a common pleas court pending the disposition of a previously filed case in a United States district court and held such an order interlocutory and therefore unappealable absent specific statutory authorization.

Despite dictum in *Reynolds* intimating that such an order might have been appealable under the Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672, in my opinion neither *Reynolds* nor the case at bar can reasonably be held governed by that act, which provides in essence: "Wherever . . . the question of jurisdiction over the defendant or of the cause of action . . . is raised in the court of first instance, it shall be preliminarily de-

termined by the court . . .; and the decision may be appealed . . . as in cases of final judgments." It is apparent that this act is irrelevant to the instant case for the issue of jurisdiction has never been presented to the court below, a precondition necessary under the act. As a matter of fact, there does not appear to be any disagreement on the issue of jurisdiction either by the parties or the court below. Nor can it be inferred from the stay order that the court below believes it had none, for such a conclusion would be directly controverted by the stay order itself which merely suspends proceedings pending disposition of the federal action or "until further order of this court." It certainly cannot be argued that this represents to any degree an abdication of jurisdiction or a finding that none exists.

The majority, however, chooses not to address itself to that issue, instead proposing that this order is appealable because it works a substantial deprivation of the rights of appellant due to a delay in prosecuting its state action. The majority's position is that, since a patent has a limited life, any period during which appellant is deprived of the use of a patent to which it is entitled represents irreparable harm. This is simply not the case. In the first place, the remedy afforded by the provisions governing damages in instances of patent infringement is broad enough to compensate for any damages suffered by appellant stemming from the alleged infringement by appellee.[1] Ad-

---

[1] See 35 U.S.C. §284: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

ditionally, even if there is a substantial deprivation as the majority holds, this deprivation is due at least in part to the conduct of appellant, who must share the responsibility for the protracted negotiations and ensuing delay. It is a somewhat compromising position to argue a substantial deprivation due at least in part to the conduct of the party now claiming such deprivation.

Finally, even if we assume that there is the deprivation upon which the majority bases its decision, and that the conduct of appellant does not preclude him from obtaining relief, the decision affording such relief suffers from a noticeable lack of clarity in both the establishment and application of whatever standards seem to be implicit in its decision. In other words, the essence of the majority's decision seems to be that when a substantial deprivation can be established as the result of what would otherwise be an interlocutory order, that order becomes appealable. There is no attempt by the majority to define or suggest exactly what constitutes such "substantial deprivation." I am convinced that there is no merit in the creation by the majority of an area of appealable orders contingent upon "substantial deprivation" which may be produced by a delay in litigation. Heretofore we have wisely adhered to a rule that the action of the court below must constitute a dismissal of the action; to transmute this concept into a "substantial deprivation" is to ignore the very basis of the unappealable interlocutory order doctrine, i.e., the prevention of piecemeal litigation.[2] Furthermore, the majority's failure to delineate

---

[2] I cannot distinguish, on the majority's rationale of "substantial deprivation" created by a delay in litigation, other cases involving delays such as the grant of a continuance or the refusal to advance a case on the trial list, cases which will soon present attempts to find shelter in the majority's new doctrine.

614

the contours of its new rule will result in an unwarranted plethora of litigation both here and below. I would therefore quash this appeal.[3]

Mr. Chief Justice BELL and Mr. Justice MUSMANNO join in this dissenting opinion.

---

[3] Whether the federal action would have a significant effect on the outcome of the state litigation need not concern us here. For this would merely go to the wisdom of issuing the stay order itself, which, at this juncture of the litigation, should not be before the Court.