443 A.2d 313

**Sally Reagan OPPERMAN**

v.

**D. Theodore OPPERMAN, Appellant.**

**D. Theodore OPPERMAN, Appellant,**

v.

**Sally R. OPPERMAN.**

Superior Court of Pennsylvania.

Submitted Jan. 21, 1981.

Filed March 12, 1982.

Petition for Allowance of Appeal Denied July 19, 1982.

**2.** Vermont has adopted the U.C.C.J.A. 15 V.S.A. § 1031 et seq. 1979 No. 136 (Adj. Sess.).

John Molnar, Bangor, for appellant.

Gus Milides, Easton, for appellee.

Before HESTER, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

Appellee, Sally Reagan Opperman, obtained an order from the lower court staying appellant's, D. Theodore Opperman's, Complaints in Divorce A.V.M. and in Equity seeking an accounting of marital property. Appellant appeals from said order. We quash.

This case has an extensive and unusual procedural history, which needs to be reviewed to appreciate the ruling of this Court.

On December 7, 1977, appellee filed a Complaint in Divorce A.V.M. Two months later, on February 3, 1978, appellant filed an Answer and Praecipe for a Bill of Particulars. However, more than a year elapsed before the Praecipe was withdrawn and a Master was appointed. One day before the Master's hearing, on May 24, 1979, appellee obtained an ex parte court order staying all proceedings until a resolution of appellee's Petition to Revoke the Appointment of a Master was made. On July 3, 1979, the Hon. Richard D. Grifo entered an order dismissing the appellee's Petition to Revoke the Master and lifting the stay. Appeals were then taken by the appellee from Judge Grifo's order to the Superior and Supreme Courts of Pennsylvania—the former appeal at No. 1519 October Term 1979 was quashed by a Per Curiam order dated December 13, 1979, while the latter Petition for Allowance of Appeal at No. 4 E.D. Misc. Docket 1980 was denied on June 5, 1980.

On November 28, 1979, appellant filed a counterclaim on the grounds of indignities and adultery to the appellee's Complaint in Divorce A.V.M. The appellee in turn, on February 20, 1980, obtained court approval to discontinue her Complaint. Nonetheless, the appellant pursued his counterclaim, with court approval, as if it were an original complaint. In response to appellant's action, appellee filed a Praecipe on April 29, 1980 for a Rule for Bill of Particulars and an independent action for Divorce A Mensa et Thoro. Thereafter, appellant filed preliminary objections to the action for legal separation and obtained the scheduling of a Master's hearing for May 5, 1980. However, on May 1, 1980, appellee obtained an ex parte order staying the hearing.

Before deciding whether the present appeal is reviewable, a second cause of action initiated by the appellant needs to be discussed to complete the picture of the instant case. To-wit, on June 6, 1978, appellant filed a Complaint in Equity seeking an accounting of certain personal property jointly owned with the appellee. Appellant contended that appellee wrongfully removed and excluded him from enjoying the natural benefits of this property. Appellee counterclaimed that it was the appellant that was wrongfully excluding her from joint possession of said personal property, which was held as tenants by the entireties.

From the date on which the Complaint in Equity was initiated until November 28, 1979, the parties were involved with the filing of answers, counterclaims, interrogatories and the taking of depositions. In fact, it was not until January 29, 1980, that appellant's counsel filed a praecipe for a non-jury trial with the prothonotary of the Court of Common Pleas of Northampton County. Before a trial date could be scheduled, however, appellee filed a "Motion to Continue Case Pending Disposition of Companion Case," on the basis that, *inter alia*, "[t]he outcome of the proceedings in the Divorce action w[ould] directly affect the rights of the parties in the instant action insofar as ownership of property [was] concerned . . . ." As a result of said Motion, the lower court (per Judge Robert A. Freedberg) issued an order on May 22, 1980, from which the present appeal was taken, that "all proceedings [be] stayed until further Order of the Court."

Appellant asserts on appeal that the lower court either lacked the authority to grant the stays, or, in the alternative, that, inasmuch as the equity action was ready for trial and the divorce proceeding was scheduled for a Master's hearing, the issuance of the stays was an abuse of discretion.

■ Despite the fact that neither side questions the jurisdiction of this Court to dispose of the present controversy, we are not precluded from reaching the appealability of the lower court's order *sua sponte, Turner v. May Corp.,* 285 Pa.Super. 241, 427 A.2d 203 (1981), for it is axiomatic that

neither silence nor agreement of the parties can confer jurisdiction where it otherwise would not be. *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977).

 The appellate court's jurisdiction is defined by statute, i.e., 42 Pa.C.S.A. § 742 (Purdon's 1981), which grants this Court "exclusive appellate jurisdiction of all appeals from *final orders* of the courts of common pleas . . . ." (Emphasis added)

In deciding if the order appealed is final or not, we are guided by the decision of *Philco Corp. v. Sunstein*, 429 Pa. 606, 241 A.2d 108 (1968), wherein the court held:

"Whether or not a stay order should be considered final for appeal purposes depends to a large extent upon the practical effect and impact the stay order might have on the relief requested by the litigants. If the effect of the stay order is tantamount to a dismissal of the cause of action or amounts to a permanent denial of relief requested, the party aggrieved should undoubtedly be afforded the opportunity to appeal on the basis that such stay order is a final disposition of some, if not all, of the rights involved.

Therefore, a consideration of the practical effects of the stay order on appellant's cause of action is an essential prerequisite in determining whether the order appealed from is interlocutory." (Footnote omitted) *Id.*, 429 Pa. at 608–610, 241 A.2d at 109–110.

Initially, we note, and all parties agree, the purpose for which appellee sought to have a stay entered in the divorce and equity actions, as well as the lower court's reasons for issuance of same, was to afford appellee the opportunity to avail herself of some of the benefits provided for under the new Divorce Code,[1] e.g., equitable distribution of marital property and, if appropriate, alimony. 23 P.S. §§ 401(d) and 501 (Supp.1981–82); *Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981).

1. The Act of April 2, 1980, P.L. 63, No. 26, § 101 *et seq.*, eff. in 90 days; 23 P.S. § 101 *et seq.* (Supp. 1981–82).

Applying the rationale of *Philco* to the case at bar, we observe that the "practical effect" of the lower court's order delaying litigation on appellant's divorce and equity actions until after the effective date of the new Divorce Code on July 1, 1980, which constituted a total of some 40 days after the entry of the order at issue, does not "work a severe hardship on appellant." *Philco Corp. v. Sunstein*, supra, 429 Pa. at 610, 241 A.2d at 110. Such conclusion is based on the fact that we are not confronted with a situation wherein the nature of the relief sought would be substantially diminished in value as a result of the issuance of the stay. No rights are being lost because of the delay in adjudicating the rights and liabilities of the parties. Likewise, we cannot dismiss the point that the period of time between the granting of the stay and the subsequent filing of appellee's divorce action under the new Divorce Code would have consisted of a short period of time. Further, given appellant's own petition seeking a divorce and complaint requesting an equitable accounting of personal property, the fact that appellee seeks to proceed under the new Divorce Code virtually guarantees that all of the issues involved in the litigation could and would be resolved in the divorce proceeding *without* any apparent *prejudice* to the parties. *Id.; Reynolds Metals Company v. Berger*, 423 Pa. 360, 223 A.2d 855 (1966). In other words, "the effect of the stay order is [not] tantamount to a dismissal of the cause[s] of action or [does not] amount[ ] to a permanent denial of [the] relief requested[.]" *Philco Corp. v. Sunstein*, supra, 429 Pa. at 608, 241 A.2d at 109. Thus, since valuable rights are not being denied as a result of the order staying the proceedings in the court below, the order appealed from must be considered interlocutory.

Procedurally, we observe that because the appellee wishes to afford herself the protection of the new provisions—a clearly permitted option in light of the fact that no final decree has been rendered prior to the effective date of the new Divorce Code—she will be permitted to make application to the lower court, which should look to our recent decision in *Gordon v. Gordon*, supra, wherein we prescribed

the manner in which a court should rule on such application. At such hearing, the appellant will have the opportunity to oppose the transfer.[2] However, we note that, given both parties' request for a divorce and equitable distribution of property, neither side would be prevented by the transfer from presenting any claims or defenses that could have been presented under the old Divorce Law.[3] The only effect of the transfer would be to add issues to the action, not to foreclose any. *Toll v. Toll*, 293 Pa.Super. 549, 439 A.2d 712 (1981).

■ The order below, being interlocutory, is appealable only if made so by statute. *Reynolds Metals Company v. Berger*, supra. No such statute has been cited to us, nor has independent research disclosed one. Accordingly, the appeal must be quashed.

Appeal quashed.

**2.** For edification purposes, we note that an order *granting* an application that a pending action proceed under the new Divorce Code is interlocutory, whereas an order *denying* an application that an action proceed under the new Divorce Code is immediately appealable as a final order. See *Gordon v. Gordon*, supra; *Toll v. Toll*, 293 Pa.Super. 549, 439 A.2d 712 (1981).

**3.** The Divorce Law, Act of May 2, 1929, P.L. 1237, as amended, 23 P.S. § 10 *et seq.* (repealed).