568 A.2d 1272

John J. DIETRICH, Jr. and Ernestine Dietrich, His Wife

v.

J.I. CASE COMPANY and Wick Implement, Inc.

Appeal of J.I. CASE COMPANY.

John J. DIETRICH, Jr. and Ernestine Dietrich,
His Wife, Appellants,

v.

J.I. CASE COMPANY and Wick Implement, Inc.

Superior Court of Pennsylvania.

Argued Sept. 1, 1988.

Filed Jan. 18, 1990.

John D. Rhodes, Pittsburgh, for J.I. Case Co.

Mary C. Fairley, Pittsburgh, for Dietrich.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

PER CURIAM:

These are appeals from a judgment and delay damages entered following a jury verdict for plaintiffs in a products liability action. Defendant below, J.I. Case Company (Case), appeals Orders denying its post-trial motions, molding the verdict against it to include delay damages, and entering judgment.[1]

---

1. The Dietrichs, plaintiffs below, appealed from a court Order granting a stay of the Order awarding delay damages "until such time as a money judgment may be authorized by this Court." That judgment was authorized on November 10, 1987. The appeal at No. 00082 Pittsburgh, 1988, therefore, would seem to be moot.

In any case, an Order temporarily suspending proceedings is not generally appealable. *Reynolds Metal Co. v. Berger*, 423 Pa. 360, 362,

This case arises from a design defect in a machine called a "mini-sneaker," manufactured by Case. The machine was designed as a "compact self-held cable plow for direct burial of telephone, gas service, cable T.V., electrical, irrigation and sprinkler system installations." The "mini-sneaker" digs a trench, places conduit and backfills in one continuous motion. It is self-propelled and is "about the size of a golf cart": approximately seven feet long, three-feet wide, and several feet tall. It is operated by a "monostick" which can be moved in all directions and allows the operator to control its operation while riding on it or walking along its side.

On June 16, 1983, John Dietrich, Jr., who was employed by C.D. MacDonald, Inc., was operating a "mini-sneaker" in the backyard of Nicholas Yacoviello. Dietrich was using the machine to bury telephone cable, which was lying on the ground's surface. He operated the machine up an incline in an adjoining yard, across the tops of several yards and down the backyard of another neighbor, where he began to lay cable. After he reached the bottom of that yard, he lifted the plow out of the ground and moved toward Yacoviello's yard. The plow was not pinned, but it could swing loose as the machine moved. As he moved the machine up a slope, he maneuvered it between two shrubs. Because there was not enough room for him to walk beside the machine while it passed between the shrubs, he released the

223 A.2d 855, 856–57 (1966). Whether or not that Order should be considered appealable depends on what practical effect it has on the relief requested by the litigants. If it effectively amounts to a dismissal of the action or a permanent denial of the relief requested, then the aggrieved party should be permitted to appeal. The Order has then, in effect, made a final disposition of those issues. *Philco Corp. v. Sunstein,* 429 Pa. 606, 609, 241 A.2d 108, 109 (1968).

The Dietrichs argue J.I. Case improperly preserved the issue of delay damages by requesting a stay of the Order awarding those damages. They present us, not with an appeal alleging an abuse of discretion or other error on the part of the trial court, but rather with an answer to J.I. Case's claim that delay damages were improperly awarded. Because they have made no argument to us on appeal concerning the validity of the stay Order, the appeal at No. 00082 Pittsburgh, 1988, is quashed. We will, however, consider their arguments concerning the propriety of J.I. Case's method of issue preservation during our disposition of that appeal.

monostick, which caused the stick to spring back into neutral. The side slope upon which Dietrich was operating the machine increased to approximately twelve degrees some twelve feet beyond the shrubs, and, after the accident, a two-inch deep depression in the ground was noted at this point. The machine moved forward at a slow speed for a short distance, and then tipped over on Dietrich, causing damage to his knee. Photographs of the scene showing the fallen machine could be read to indicate that the machine had reached this depression at the time of the accident.

Dietrich and his wife brought suit against J.I. Case Company, the manufacturer, and Wick Implement, Inc., the distributor of the "mini-sneaker," claiming they were strictly liable for his injuries. The Dietrichs voluntarily discontinued the action against Wick, and it was dismissed from the case. The action against Case went to trial, and the jury returned a verdict for the Dietrichs.

The Dietrichs filed a timely petition for delay damages on December 1, 1986. Case filed an answer and new matter to the Dietrichs' petition on December 8, 1986, along with a motion for post-trial relief. The Dietrichs replied to the new matter. Oral argument on the delay damages claim was held on January 5, 1987, and the court awarded delay damages in the amount of $72,438.35. At this point, Case petitioned for and was granted a stay of the Order awarding delay damages. The Order was stayed "until such time as a monetary judgment may be authorized by this court." In November of 1987, the trial court denied Case's motion for post-trial relief, so that the stay Order ceased to be effective. Judgment was entered on December 30, 1987, and the verdict was molded to include delay damages. These appeals followed; however, as noted in footnote 1, the plaintiff/Dietrichs' appeal at No. 00082 Pittsburgh, 1988, is quashed.

On appeal, Case argues the trial court erred in denying its motion for judgment notwithstanding the verdict (j.n.o. v.). Case also complains the trial court erred in refusing to instruct the members of the jury that if they found Dietrich

had voluntarily assumed the risk, the verdict must be in its favor. Lastly, Case argues the imposition of delay damages was improper. We affirm both the judgment on liability and the award of delay damages.

## I. LIABILITY

Case argues the trial court erred in refusing to grant j.n.o.v. because the evidence was insufficient as a matter of law to prove the alleged defect in the product was a substantial factor in causing the injury to Dietrich. The Dietrichs contend this Court cannot properly consider this claim because Case's motion for post-trial relief did not specifically state insufficiency of the evidence as a ground upon which it moved for j.n.o.v., but rather cited the trial court's argument to be specious. In its motion for post-trial relief, Case claimed:

82. The Trial Court erred in failing to instruct the jury, in accordance with point No. 1 as submitted by the defendant, that based upon the law and the evidence presented in this matter, the jury verdict must be in favor of the defendant, and against the plaintiffs upon the plaintiffs' cause of action in strict liability.

*WHEREFORE*, the defendant respectfully requests that this Honorable Court en banc enter a judgment notwithstanding the verdict in favor of the defendant.

An examination of the binding instruction indicates these grounds were also raised there: "Based upon the law and the evidence presented in this matter, your verdict must be in favor of the defendant, J.I. Case Company, and against the plaintiffs, John J. Dietrich, Jr., and Ernestine Dietrich, his wife, upon the plaintiffs' cause of action in strict liability."[2] In both the post-trial

2. This Court never mechanically applied standards governing the form in which a party requested binding instructions as long as the trial court was presented with the question it was asked to decide. *See e.g., Bloom v. Pike Township School Dist.,* 162 Pa.Super. 148, 150, 56 A.2d 348, 349 (1948) (request stated "under all the evidence, binding instructions are requested and that a verdict be directed for the defendant"); *cf. Frank v. Peckich,* 257 Pa.Super. 561, 579, 391 A.2d

motion,[3] and in the binding point for charge, Case has cited insufficiency of the evidence as grounds for granting j.n. o.v. We therefore find the issue as to sufficiency of the evidence is preserved for our review.

■ In order to make out a case of strict products liability, a plaintiff must show there is a defect in the product and that the defect was the cause of an injury. *Sherk v. Daisy–Heddon*, 498 Pa. 594, 602, 450 A.2d 615, 619 (1982); *Vernon v. Stash*, 367 Pa.Super. 36, 48, 532 A.2d 441, 447 (1987). In the instant case, while Case concedes the "mini-sneaker" contained a design defect, it argues the expert opinion testimony of the Dietrichs' expert witness, John Wiss, was insufficient to show causation because he assumed facts which were not of record. Specifically, Case argues Wiss ignored testimony of both Dietrich and Yacoviello, who were eyewitnesses to the accident, that they did not remember vibrations in the machine, any bumping, or any irregularities in the ground over which the machine travelled. Further, Case claims Wiss relocated the accident scene to a place where he had discovered a depression in the ground several months after the accident. Wiss based his opinion on the assumption that the unpinned plow at the back of the machine could swing from left to right as it moved, bumping into the "mini-sneaker," and that this, in combination with the depression into which the machine's tires could have slipped, created sufficient dynamic forces to cause the machine to tip over. The "mini-sneaker," because of its design, was, in fact, "top heavy;" it had a

624, 632 (1978) (issue not preserved where two defendants involved, and request for binding instructions unclear on whose behalf).

Here, Case conceded the existence of a defect in the machine; the only issue raised at the trial level and in the motion for post-trial relief concerned the question of causation. The trial court was aware of the question before it. We therefore conclude the motion was specific enough to preserve for review the question of whether or not j.n.o.v. should have been granted.

**3.** We note that the motion filed by Case specified the precise relief requested as required by Pa.R.C.P. 227.1(d). Further, the post-trial motion requesting j.n.o.v. sufficiently specified the grounds for relief, and stated how those grounds were asserted at trial. *See* Pa.R.C.P. 227.1(b)(1) & (2).

high center of gravity and was susceptible in certain instances to falling on its side.

In reviewing the refusal or grant of j.n.o.v., an appellate court must review the evidence and all inferences to be drawn from the evidence in the light most favorable to the verdict winner. Only evidence favoring the verdict winner must be considered, all other evidence must be rejected. If that evidence is then sufficient to support the verdict, j.n.o.v. was properly refused. *Wenrick v. Schloemann–Seimag Aktiengesellschaft*, 361 Pa.Super. 137, 145, 522 A.2d 52, 56 (1987), *allocatur granted*, 518 Pa. 643, 542 A.2d 1371 (1988). Judgment notwithstanding the verdict is proper only when two reasonable minds could not differ that, as a matter of law, the verdict winner could not make out a case. *Maravich v. Aetna Life and Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986).

Taking the evidence in the light most favorable to the verdict winner in the instant case, Wiss' opinion testimony was proper. He had run tests with the "mini-sneaker," had considered reports of other tests that had been run concerning its stability and had reviewed a tape of the test made by Case of the machine after Dietrich's accident. He was presented with testimony from both Dietrich and Yacoviello that they did not recall any bumping or vibrations from the machine. Dietrich testified he felt no instability in the machine while he was plowing, the plow was unpinned as he began to go through the bushes, he moved the wheels to the right at that point, the monostick moved in his hand or "felt funny," and there was not much time between the movement of the monostick and the machine's falling over. Wiss' tests and the tests of Case showed the plow, when unpinned, swung heavily back and forth and, at times, bumped into the machine.

Further, Wiss took into account evidence of a depression in the ground, some two inches deep and one foot long found three years later during his examination of the property. Wiss testified it was his opinion the dynamic forces caused by the swinging plow and the depression in the

ground were sufficient to topple the machine. Again, Case argues Yacoviello testified he had at the time of the accident recently reseeded and raked his yard and there was no obstacle in the yard. Case also argues, in any case, the pictures taken by Yacoviello at the time of the accident show the machine could not have travelled the distance necessary to reach the depression. Wiss testified he had made no measurements of the yard, but, according to his calculations of the dimensions of the machine and its position relative to the three bushes in the photographs, it could have reached the depression.

Again, taking the evidence in the light most favorable to the Dietrichs and rejecting all evidence against them, Wiss could draw the inference that the loose plow did swing at least once, the machine did reach the depression, it became unstable upon hitting the depression, the stick then moved in Dietrich's hand, although he had felt no instability he could recall, and the machine fell over on him. We see no speculation on Wiss' part in reaching the conclusion, based on these facts, the defect in the machine caused the accident. If opinion evidence is to have probative value, it must be based on facts proven or *assumed* which are sufficient to allow the expert to render an intelligent opinion. Facts assumed need not be conclusively proven; it is sufficient for evidence of record to tend to establish those assumptions. *Vernon, supra* 367 Pa. at 52, 532 A.2d at 449. In this case, the inferences from the facts of record were sufficient to establish the assumptions made. We do not find the basis of the conclusions was inferred from the conclusion itself. *Collins v. Hand,* 431 Pa. 378, 390, 246 A.2d 398, 404 (1968). Judgment notwithstanding the verdict was properly refused.

Case next argues the trial judge's instructions constituted error because he failed to include in the charge the statement that if the jury found Dietrich to have assumed the risk, he was barred from recovery.[4]  In review-

---

**4.** Dietrich argues this challenge to the instructions is waived because Case failed to object a second time after the trial judge recharged the

ing contentions a jury charge was erroneous, the appellate court must not review the points in question out of the context of the charge as a whole. Rather, we must determine whether, in the context of the entire charge, and against the background of the evidence in the case, Case has demonstrated the trial court committed prejudicial error. *Brandimarti v. Caterpillar Tractor Co.*, 364 Pa.Super. 26, 29–30, 527 A.2d 134, 136 (1987), *allocatur denied*, 517 Pa. 629, 539 A.2d 810 (1988). The trial judge is not required to use the exact language of a requested point. He or she may use any language he or she wishes as long as it adequately and clearly covers the subject in question. *Id.* If the charge is erroneous in a basic sense and the extent to which it might have been prejudicial to the complaining party cannot be determined, the grant of a new trial is proper. *Sagala v. Tavares*, 367 Pa.Super. 573, 579, 533 A.2d 165, 168 (1987), *allocatur denied*, 518 Pa. 626, 541 A.2d 1138 (1988).

A review of the charge in the instant case shows the trial judge did not use the words "barred from recovery" in his charge on products liability and assumption of the risk. What he in fact stated was, "assumption of the risk is a

jury on products liability. Counsel for Case objected to the instruction immediately following the trial judge's charge to the jury. The products liability charge was not altered on recharge. We have held that a party who fails to object again when the charge is varied on reinstruction loses his or her chance to complain on appeal. *See, e.g., Thompson v. Motch & Merryweather Machinery Co.*, 358 Pa.Super. 149, 156, 516 A.2d 1226, 1229–1230 (1986), *allocatur denied*, 515 Pa. 584, 527 A.2d 544 (1987) (failure of defendant's counsel to object to the court's corrected instructions on the issue of substantial alteration effectively precluded him from assigning court's instructions as basis for new trial); *DiSerafino v. Bucyrus–Erie Corp.*, 323 Pa.Super. 247, 253, 470 A.2d 574, 577 (1983) (failure of defendant's counsel to object to corrected instructions he had requested did not preserve issue for review). In the present case, we find counsel did not need to reiterate his objection. The charge was not altered in any way, merely repeated. Counsel objected when the charge was first given, and after trial raised the issue in post-trial motions. *Cf. Matsko v. Harley Davidson Motor Co., Inc.*, 325 Pa.Super. 452, 461–462, 473 A.2d 155, 159–160 (1984) (after holding that counsel is required to repeat objections when grounds for objection occur in separate phases of trial, court stated in dicta that once objection had been properly made, counsel was not required to repeatedly voice objections). We find J.I. Case has preserved the issue for our review.

defense, and as such, the burden of proof is on the [defendant]." The trial judge then went on to outline the elements of that defense.[5] Case complains this charge failed to present to the jury the legal consequences of finding Dietrich had assumed the risk. Case argues under *McGonigal v. Pittsburgh Railways Co.*, 243 Pa. 47, 89 A. 805 (1914), the trial court must state what the legal results of a determination of fact must be.

While it is axiomatic that a trial court must clarify the issues so the jury may comprehend the questions they are to decide, *see Brandimarti, supra* 364 Pa.Super. at 29, 527 A.2d at 136, *McGonigal* does not require the exact result desired by appellant here. In *McGonigal*, the trial judge charged the jury on what was actually an issue of law for the court and not an issue of fact for the jury:

> We think this instruction was erroneous in that it left to the jury to determine the law on a state of facts which convicted the plaintiff of manifest negligence and should have been so stated by the court. If the evidence disclosed the facts stated by the learned trial judge the plaintiff was clearly guilty of negligence and the court should not have told the jury that it was for them to decide whether he was guilty of contributory negligence.

*Id.*, 243 Pa. at 50, 89 A. at 806. In the present case, there is no indication the trial court presented the plaintiffs' case more persuasively than the defendant's case in his instructions, *see id.;* nor are the facts in this case so clear as to

---

**5.** The opening portion of the charge stated:
The plaintiffs claim that the husband/plaintiff ... was injured and sustained damage as a result of using a defective product, that is, the Mini–Sneaker in this case which tipped over and fell upon his leg causing injuries. The plaintiffs have the burden of proving that claim.
  The defendant denies the plaintiffs' claims, denies that the plaintiff sustained injuries because of any defect and asserts as an affirmative defense that the plaintiff assumed the risk of harm in operating the Mini–Sneaker under the circumstances then and there prevailing. Defendants have the burden of proving an affirmative defense.

require the trial court to make determinations as a matter of law. Rather, the trial court correctly instructed the jury as to the issues on which it was required to make findings of fact and on the law to be applied to those facts. Informing the jury that assumption of risk was a defense was tantamount to stating recovery was barred in that instance.[6] We find the trial court did inform the jury of the legal consequences of its determination.

After an examination of the charge as a whole, we do not find any error prejudicing Case. As the trial court stated in its opinion, "this instruction clearly set out that such a finding of assumption of the risk is a 'defense' and the jury was properly instructed on the elements necessary. The defendant was given every opportunity to develop that issue."

For the above reasons, we find the jury verdict and subsequent judgment entered as to the liability of appellant Case were proper, and we affirm.

## II. DELAY DAMAGES

Case next argues delay damages were improperly awarded in this case. It complains the trial court improperly assessed delay damages against it without making a finding it had caused delay in the trial of the case. Case also argues Pa.R.C.P. 238, as applied in this case, is unconstitutional for several reasons: (1) the rule exceeds the rule-making authority granted to the judiciary by the Pennsylvania Constitution; (2) the rule imposes delay damages for future losses and injuries not yet payable, and violates the excessive fines clause of the United States Constitution; (3)

---

6. We find Case's argument a jury is not sophisticated enough to comprehend the meaning of the term "defense" to be illogical in light of its further contentions that prejudice occurred because it would not be unreasonable to assume most if not all members of the jury were familiar with the concept of comparative negligence. It seems to us not unreasonable to assume the jury would understand a defense to be a bar to recovery unless instructed to the contrary.

the rule treats plaintiffs and defendants differently by requiring defendants to make a settlement offer, but not plaintiffs; and (4) the rule violates the equal protection clauses of the federal and state constitutions by assessing delay damages at a rate in excess of the legal interest rate.

The Dietrichs argue Case failed to properly preserve these issues for our review, relying on Pa.R.C.P. 227.1. An examination of the newly revised Rule 238 indicates that an Order of the court concerning delay damages is not subject to a motion for post-trial relief. *See* Pa.R.C.P. 238(c)(1), note. Plaintiff need only file a motion requesting delay damages within ten days of the verdict or the notice of the decision. Pa.R.C.P. 238(c)(1). Therefore, it was unnecessary for Case to file post-trial motions concerning delay damages.[7] The issue has not been waived.

Although an examination of the Order entered in this case awarding delay damages to the plaintiffs shows the trial court determined that no fault was attributable to plaintiffs, and then assessed delay damages against Case which is consonant with this Court's decision in both *King v. Southeastern Pennsylvania Transportation Authority*, 383 Pa.Super. 420, 557 A.2d 11 (1989), and *Ceresini, supra*, we believe the constitutional issues raised by Case should be addressed.

The Constitution of the Commonwealth of Pennsylvania gives the Supreme Court of the Commonwealth the authority to:

prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules are consistent

7. This Court, in *Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 552 A.2d 258 (1988), indicated that where an award of delay damages has been appealed, delay damages have not been finally determined and the newly promulgated Rule 238 is applicable to the case. We are therefore constrained to consider the rule here. In any case, we note that neither the Rules of Appellate Procedure, nor the Rules of Civil Procedure, have ever specifically required issues concerning delay damages to be raised in post-trial motions.

with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant.

Pa. Const. art. V § 10. In *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), the Supreme Court upheld the constitutionality of old Rule 238 against several challenges, among them a claim that the rule exceeded the rule-making authority of the court. *Id.*, 496 Pa. at 62–67, 436 A.2d at 153–155. The Court held the old rule embodied both procedural and substantive elements; "[i]ts purpose and effect are procedural, yet its performance will touch upon substantive rights of both parties. However, the fact that a rule does involve the substantive rights of litigants should not mean that the rule is an inappropriate topic for Supreme Court rule-making. Most rules of procedure will eventually reverberate to the substantive rights and duties of those involved." *Id.*, 496 Pa. at 66, 436 A.2d at 155.

Some five years later in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), the Supreme Court was again faced with questions concerning the constitutionality of Rule 238 on the grounds of due process, equal protection and separation of powers. At that point, the court questioned the validity of several of its *Laudenberger* assumptions in the *Craig* context:

> The *Laudenberger* Court accepted as an underlying reason for the Rule that there was a deliberate, profitable delay on the part of tortfeasors. If one accepts that a refusal to settle is always prompted by such motives, then no wrong is done a wrongdoer, and the rationale of *Laudenberger* would have settled the argument for then and always.

*Id.*, 512 Pa. at 64, 515 A.2d at 1352. The *Craig* Court found that the argument was not settled, however, because in *Craig* the Court was faced with a faultless defendant, and a plaintiff at fault. *Id.*, 512 Pa. at 64, 515 A.2d at 1353. These circumstances caused a reassessment of the earlier decision. While the Court declined to overrule the rationales of *Laudenberger*, it did find that its prior determina-

tions of the substantive and procedural aspects of the rule were questionable:

> There is no point in contending that a procedural rule may exist which punishes without fault, and is yet consistent with Due Process. Neither is there point in arguing that a procedural rule that punishes a defendant *qua* defendant does not smack of a substantive enlargement of duties owed.

*Id.* 512 Pa. at 65, 515 A.2d at 1353. Although the Court never specifically stated the precise constitutional grounds upon which it rested, it found enough of a constitutional problem that it suspended the offensive portions of the rule, and laid out a fact-finding procedure to determine fault prior to imposition of delay damages. New Rule 238, which was promulgated to effectuate the *Craig* decision, provides it is the plaintiff's fault which must be determined before delay damages may be assessed; that fault should be subtracted from the overall delay in the trial and damages should be imposed upon defendants for the remaining period. The fault of the defendant—or lack thereof—is immaterial. *See King, supra; see also* Pa.R.C.P. 238.

We are now faced with the question of whether the Supreme Court had the constitutional authority to remake the old rule into a rule which permits an award of delay damages without a consideration of the fault of the defendant. It is immaterial that the defendant does not commit a further act which would delay the case, as he must accept the consequences of the entire extent of litigation which follows because he failed to meet the initial requirement of a bonafide offer of settlement, which would have served to insulate him from delay damages. The dissent, in finding Rule 238 unconstitutional, would have a two-step rule to impose delay damages—first, a defendant's failure to make a bonafide offer, and second, that defendant was at fault in failing to pursue the litigation expeditiously. The new Rule 238 does, in effect, provide for even-handed

fault assessment. On the one hand, defendant is liable for delay damages in failing to make a reasonable settlement offer, on the other hand plaintiff cannot prevail if it has caused the delay. The dissent cites *Girard Trust Corn Exchange Bank v. Brinks, Inc.*, 422 Pa. 48, 220 A.2d 827 (1966), to support its view that the fault of both plaintiff and defendant must be assessed. This observation is misplaced. *Girard* relies on *Pierce v. Lehigh Valley Coal Co. (No. 2)*, 232 Pa. 170, 81 A. 142 (1911), for this holding. To begin with, those cases predated Rule 238 (old and new) and the broad exercise of the rule-making authority of the Supreme Court, which came about only after the 1968 constitutional amendments and the creation of the Unified Judiciary. Secondly, the holding that delay damages must be assessed against the defendant if he is at fault, and not if the plaintiff was at fault, simply states in judicial language what has been promulgated in Rule 238. Rule 238 has made certain and routine what was formerly a spurious and optional proceeding. It further eliminated the problem of proof in establishing a standard criterion for fixing delay damages thereby making effective a necessary procedure to facilitate resolution of cases without trial and to proceed expeditiously with trial once litigation began.

We, therefore, hold Rule 238 is not patently unconstitutional, and any further determination in this respect can only emanate from the Supreme Court. We also mention the reminders in the Supreme Court's pointed statements to this Court, expressed in Opinions by that Court, that we may not ignore its decisions (or rules), nor may we ignore the recent holdings of our en banc decisions in *Ceresini, King* and *Miller, supra*. *See Commonwealth v. David L. Jones*, 520 Pa. 385, 554 A.2d 50, 51–52 (1989), ("we take this opportunity to remind our Superior Court colleagues that Superior Court does not have authority to determine that decisions of *this* Court are 'no longer controlling in light of [a Superior Court] decision,'" and *Commonwealth v. Gambal*, 522 Pa. 280, 561 A.2d 710 (1989) (Superior Court panel

may not ignore a Superior Court en banc decision, *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987), which holds Pa.R.A.P. 2119(f) is a procedural requirement and not a jurisdictional requirement and the court may treat Commonwealth's failure to object as waiver).

We are bound by the Supreme Court's decision in *Laudenberger*, and as this Court noted in *Shellhamer v. Grey*, 390 Pa.Super. 122, 129, 568 A.2d 224, 228 (1989), "it would be spurious for us to reconsider the same issues in this appeal."

Judgment affirmed as to liability and delay damages at No. 00081 Pittsburgh, 1988; appeal No. 00082 Pittsburgh, 1988, is quashed.

CIRILLO, P.J., concurs and dissents.

CIRILLO, President Judge concurring and dissenting.

I join in Part I of the majority's decision on the issue of liability. However, I must respectfully dissent to the majority's resolution of the delay damages issue in Part II.

In my opinion, rule 238, because it operates to modify the substantive rights of the parties, exceeds the rule-making authority of the Pennsylvania Supreme Court, and is therefore unconstitutional.[1] In my view, the supreme court did not have the authority to promulgate a rule which does not consider the fault of both the defendant and the plaintiff. Were a truly fault-based rule to be implemented, which would determine the fault of either party, assessment of damages against a defendant according to his or her fault would be seen as a sanction, a constitutionally permitted act on the part of the supreme court. This rule, however, as

---

1. I believe that the new rule is also unconstitutional because it is unfair to defendants. *See Schrock v. Albert Einstein Medical Center, Daroff Division*, 386 Pa.Super. 215, 562 A.2d 875 (1989) (en banc) (Cirillo, P.J., dissenting) (constitutional issues must be reached because there was no mechanism in place for issue preservation).

conceded by this court, is a prejudgment interest rule which works, not only to facilitate settlement, but to make the plaintiff whole by reimbursing him or her for inability to use funds rightfully his or hers. No other conclusion may be drawn from the assessment of damages against the defendant for delay not caused by that defendant. As such, the rule modifies the substantive rights of the parties involved. Prior to rule 238, prejudgment interest was not permitted in tort actions seeking to recover unliquidated damages. *See Girard Trust Corn Exchange Bank v. Brinks, Inc.*, 422 Pa. 48, 220 A.2d 827 (1966).[2]

Penalizing a plaintiff for his or her fault in delaying the trial process does not insure that a faultless defendant will be insulated from punishment. The rule, as it is now applied, will punish a defendant simply because he or she chooses to litigate a case by assigning to him or her the responsibility for all delay regardless of fault which cannot be directly attributed to the plaintiff. Under new rule 238, the defendant is punished simply because he or she is a defendant. This is an obvious enlargement of the substantive duties owed, an enlargement which, under the constitution of this Commonwealth, requires legislative action. I find the rule as presently written is therefore invalid.

I would reverse the award of delay damages.

**2.** It should be noted that in *Marrazzo v. Scranton Nehi Bottling Co., Inc.*, 438 Pa. 72, 263 A.2d 336 (1970), the supreme court vacated a judgment and remanded for a determination by the trial court of whether damages for delay should be included in the compensation awarded the plaintiff. *Id.*, 438 Pa. at 77, 263 A.2d at 338. The court made it clear, however, that it envisioned a finding of fault on the part of the defendant before he or she could be liable for that delay:

"If the fault in nonpayment of the claim rests with the defendant, he cannot complain if he is required to compensate for the delay. If on the other hand the fault lies with the plaintiff by reason of an excessive and unconscionable demand, one which the defendant is required to protect himself against by litigation, he should not be penalized for the unwarranted conduct of the plaintiff, and required to pay damages for the delay in the settlement of the claim."

*Id.*, 438 Pa. at 75, 263 A.2d at 338 (*quoting Pierce v. Lehigh Valley Coal Co. (No. 2)*, 232 Pa. 170, 172, 81 A. 142, 143 (1911)).