**Sohn v. Luparelli**

*George O'Neill,* for plaintiffs.
*Richard K. Hohn,* for defendant.

KATZ, *J.*, July 30, 1991—This opinion is in support of the orders dated May 28, 1991, and May 30, 1991, granting plaintiffs' motion for delay damages, and the order dated June 18, 1991, denying defendant's petition for reconsideration.

## BACKGROUND

This case arose as a result of an automobile accident between two vehicles driven by Jong Soo Sohn and Richard Luparelli on February 25, 1985. Mr. Sohn and his wife, Carletta, a passenger in the vehicle, both sustained personal injuries.

Suit was instituted by way of complaint on July 28, 1986. The case was tried before a jury, commencing on April 15, 1991. On April 18, 1991, the jury returned a verdict in favor of the plaintiffs and against the defendant, awarding an aggregate sum of $72,500.

Richard R. Luparelli, now deceased, originally had retained J. Vincent Roche as counsel in this matter. Discovery commenced promptly, and by July 10, 1987, plaintiffs had filed answers to defendant's interrogatories. In those answers plaintiffs claimed that, due to the accident with Luparelli, Carletta Sohn, alone, had sustained bills and lost wages, not covered by insurance, totalling $14,281.[1]

Following this discovery and prior to trial in this matter, the defense made three written offers to the plaintiffs: (1) by letter dated June 10, 1988, the defense

---

1. Carletta Sohn's itemized bills and wage loss, at a conservative figure, amounted to at least $29,281, defendant's petition for reconsideration (hereinafter referred to as "defendant's petition"), exhibits A, B and C(48). However, $10,000 of the medical bills and $5,000 of the lost wages were covered by the plaintiff's health insurer. Defendant's petition, exhibit C(17)(e).

tendered "the sum of $35,000 to plaintiffs in full and complete settlement of their claims," plaintiffs' motion for delay damages (hereinafter referred to as "plaintiffs' motion"), exhibit A; (2) by letter dated July 14, 1988, Mr. Roche "augment[ed] defendant's offer to $56,000," plaintiffs' motion, exhibit B; and (3) by letter dated November 10, 1989, Mr. Roche wrote: "In reviewing my file, I note that a prior offer of $46,000 was tendered to but rejected by plaintiffs. Defendant hereby augments that amount by plaintiffs' out-of-pocket expenses. Upon word from you, I will draft and submit the condign closing instrument," plaintiffs' motion, exhibit C. All three offers were rejected by the plaintiffs, who demanded $250,000.

On April 26, 1990, plaintiffs' counsel, George O'Neill had a conversation on the phone with Nancy McKittrick, a claims negotiator from the defense's insurance carrier.[2] McKittrick informed him that she was not aware that the final offer had been made. Following the conversation, both individuals exchanged correspondence. In McKittrick's letter dated the day of the conversation, she recorded that O'Neill had informed her that the plaintiffs had been offered "$46,000 plus the out of pocket *medical* expenses," plaintiffs' motion, exhibit D. In O'Neill's correspondence, dated the same day, he set forth that he believed that the earlier offer "amounted to $86,000, on November 27, 1989." Defendant's answer to motion for delay damages (hereinafter referred to as "defendant's answer"), exhibit A.

---

2. Although J. Vincent Roche did not officially withdraw as counsel for the defense until May 4, 1990, he apparently had terminated performing services for the defense prior to the April 26, 1990, conversation.

On August 6, 1988, original defendant Richard Luparelli died. Nevertheless, no administrator was named for the estate until the eve of trial in April 1991, when decedent's father, John A. Luparelli was appointed. Not until trial in this matter commenced on April 15, 1991, was John Luparelli, as administrator of the estate of Richard Luparelli, deceased, substituted as the defendant of record.

Promptly following the jury verdict, plaintiffs filed a motion for delay damages on the combined $72,500 verdict, seeking interest from July 28, 1986, (when complaint was filed) until April 18, 1991, (when verdict was rendered). In an order dated May 28, 1991, plaintiffs' motion was granted and delay damages awarded for the full period requested. An amended order was filed on May 30, 1991, to simply correct a typographical error with regard to the amount of the jury verdict in favor of plaintiff, Carletta Sohn. In response to this order, defendant filed a petition for reconsideration, which was denied in an order dated June 18, 1991.

Defendant timely appealed from these orders. This opinion addresses the five arguments that defendant made against the awarding of full delay damages.

## LEGAL ARGUMENT

Pennsylvania Rule of Civil Procedure 238, made effective on November 7, 1988, sets forth, in relevant part:

"(a)(1) At the request of the plaintiff ... damages for delay shall be added to the amount of compensatory damages awarded ... in the verdict of a jury.

"(2) Damages for delay should be awarded for the period of time:

"(i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision, or;

"(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

"(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any;

"(1) after which the defendant has made a written offer of ... settlement in a specified sum with prompt cash payment to the plaintiff ... which offer was not accepted and the plaintiff did not recover ... more than 125 percent of ... the specified sum ... or (2) during which the plaintiff caused delay of the trial....

"(c)(1) ... If an issue of fact is raised, the court may, in its discretion, hold a hearing before entering an appropriate order."

## 1. *Unconstitutionality*

Defendant first argued that no delay damages should be awarded because Pennsylvania Rule of Civil Procedure 238 is violative of the Pennsylvania and the U.S. constitutions.

In 1986, the Supreme Court of Pennsylvania suspended the mandatory provisions of the former Rule 238 governing delay damages without specifically stating the precise constitutional grounds. *Craig v. Magee Memorial Rehabilitation Center,* 513 Pa. 60, 515 A.2d

1350 (1986). The present Rule 238 was promulgated to effectuate the *Craig* decision.

The Superior Court of Pennsylvania has reviewed the constitutionality of the present Rule 238 and has concluded that "Rule 238 is not patently unconstitutional and any further determination in this respect can only emanate from the Supreme Court." *Dietrich v. J.I. Case Co.,* 390 Pa. Super. 475, 490, 568 A.2d 1272, 1279 (1990).

The Pennsylvania Supreme Court has not made any decisions regarding the constitutionality of the present Rule 238. The court did apply the rule, however, in a recent decision, where it found that a trial court had not committed an error when it assessed delay damages against a hospital defendant that was not at fault for causing the delay of the trial.[3] *See Schrock v. Albert Einstein Medical Center,* ___ Pa. ___, 589 A.2d 1103 (1991).

In lieu of the Superior Court's pronouncement that the rule is constitutional, and in lieu of the Supreme Court's application of the rule and failure, as of yet, to find it unconstitutional, it was proper not to deny delay damages based upon defendant's constitutional argument.

## 2. *Defendant's Lack of Fault*

Defendant further argued that no delay damages should be awarded because defendant consistently at-

---

3. The court found that the defendant had waived its constitutional challenge by not raising the issue at the trial court level. *Schrock v. Albert Einstein Medical Center,* ___ Pa. ___, 589 A.2d 1103, 1104 n.1 (1990).

tempted resolution of this case with good faith efforts, and the parties' failure to settle was caused solely by plaintiffs' recalcitrance.

The Pennsylvania Supreme Court, however, has determined that defendant's fault, or lack thereof, is irrelevant in applying Rule 238. Although Rule 238 does not allow delay damages when any delay is caused by a plaintiff, Pa.R.C.P. 238(b)(2), the rule does not require that a defendant have been the cause of any delay. See *Schrock*, 589 A.2d at 1106-07. In *Schrock*, the Supreme Court stated "it is irrelevant whether that defendant subsequently delays the progress of the litigation when the trial court assesses delay damages." *Id.*, 589 A.2d at 1107. Therefore, it was proper not to withhold delay damages based solely on the alleged recalcitrance on the part of the plaintiffs.

### 3. *Delay Damages Against Administrator of the Defendant's Estate*

Defendant's third argument was that no delay damages should be awarded against the defendant, John A. Luparelli, administrator of the estate of Richard R. Luparelli, deceased, because he was a non-participant throughout all but three days of the period in which delay damages are claimed to have accrued. Defendant claimed that plaintiffs' attorney was notified immediately of the death, and yet failed to file for appointment of an administrator. During the period of time in which the estate was unrepresented, defendant argued, there was technically no defendant, based upon an assertion that suits against dead men are nullities. Defendant concluded that the estate should not be penalized with delay damages during the period of time when there was, in his mind, no defendant to the law suit.

This argument failed on the law and on the facts. Although a suit may not be brought against a dead man, all causes of action survive the death of the defendant if suit was instituted, as occurred in the present matter, before the defendant's death. 20 Pa.C.S. §3371, 42 Pa.C.S. §8302. Furthermore, Pennsylvania Rule of Civil Procedure 2354, which addresses the status of a successor (an individual who has succeeded to the interest of a party to an action), holds that "[i]f the successor voluntarily becomes a party to the action ... he shall have all the rights and liabilities of a party to the action." Pa.R.C.P. 2354. Therefore, when Richard Luparelli died, this action survived and his estate was responsible for any of his legal liabilities. When John Luparelli voluntarily assumed the role of administrator of his son's estate and his capacity as administrator, succeeded to his son's interests as a matter of law, he took on the litigation liabilities of the estate, which included delay damages.

From a factual standpoint, there was no discontinuation of representation by defense counsel following Richard Luparelli's death. On November 10, 1989, (over a year after Richard Luparelli's death, and over a year before trial commenced) defense counsel made a written offer to the plaintiffs. On April 26, 1990, (a year before trial) a letter was sent from defendant's insurance company to plaintiffs' attorney discussing the status of negotiations. Defense counsel, Richard Hohn filed an entry of appearance on behalf of the defense in May 1990, and a praecipe for suggestion of death in November 1990.

Therefore, based upon the law, which demonstrates that there is a transference of liability to parties' successors, and based upon the facts, which indicate that there was representation of the defendant party fol-

lowing Richard Luparelli's death, delay damages were properly imposed against John Luparelli, in spite of his late substitution.

### 4. *First Year After Complaint*

Defendant further argued that delay damages, if imposed at all, should not be imposed for the first year after the complaint was filed, even though Rule 238(a) specifically allows for interest during this time period for actions such as this action, that commenced *before* August 1, 1989. Defendant pointed out, then concluded, that Rule 238 does not allow for first year interest for actions commencing *after* August 1, 1989, and "as there is no reasonable basis for the disparate treatment of these two classes, the rule fails to pass constitutional muster and must be stricken as a violation of the rights to equal protection under the laws guaranteed by the Pennsylvania and U.S. constitutions." Defendant's memorandum of law in support of defendant's new matter.

The explanatory comment that followed the promulgation of the present Rule 238 addressed the disparate treatment: "In order to prevent unfairness to parties who may have delayed filing the initial complaint in reliance upon the former provision, subdivision (a)(2)(ii) of the amended rule will become effective one year later than the remainder of the provisions." Pa.R.C.P. 238, explanatory comment, 1988. This provides the reasonable basis for disparity that defendant overlooked. Furthermore, as noted above, the Superior Court has found that the rule is constitutionally valid.

Therefore, in accordance with Rule 238(a)(2)(i), it was proper to impose delay damages beginning on July 28, 1986, when the complaint was filed.

## 5. *Specified Sum*

Finally, defendant argued that delay damages, if imposed at all, should not be imposed for the period of time following November 10, 1989, when defendant offered, in writing, $46,000, "the amount of plaintiff's out-of-pocket expenses."

As set forth more completely above, Rule 238(b)(1) ends the imposition of delay damage interest on the date, if any, when defendant has made a written offer of settlement in a "specified sum" to plaintiff that amounted to at least 80 percent of the eventual recovery. In the present matter, 80 percent of the total jury verdict of $72,500 amounts to $58,000. Defendant asserted that the November 10, 1989, offer ($46,000 plus "out-of-pocket expenses") exceeded this $58,000 plateau, and that both parties understood that to be true, based upon plaintiff's responses to interrogatories and the correspondence between the parties.[4] Plaintiffs argued, however, that such offer was not for a "specified sum," as mandated by Rule 238(b)(1)(i), and, therefore, did not bar further imposition of delay damages.

There is no statutory definition of "specified sum," and, likewise, no case law on this issue. Therefore, the words should be construed "according to their com-

---

4. Throughout his motions, defendant placed great importance on the fact that George O'Neill, plaintiffs' counsel, had informed Nancy McKittrick, an employee of the defense's insurer, that O'Neill believed the November 10, 1989, offer amounted to an offer for $86,000. Such importance is misplaced. O'Neill's estimation was made in the context of a discussion with a claims negotiator who recently had entered the fray of settlement negotiations on behalf of the defense. His desire to begin negotiations anew at the highest possible settlement level is apparent, and should forestall the placement of great significance on such estimation.

mon and approved usage." Pa.R.C.P. 103(a). The word "specified," is the past tense of specify, which means "to name or state explicitly or in detail." *Webster's New Collegiate Dictionary* 1108 (1980). "Specify" has also been defined as "to state in full and explicit terms, to point out, to tell or state precisely or in detail; to particularize, or to distinguish by words one thing from another." *Black's Law Dictionary* 1255 (5th ed. 1979).

The explicit and precise nature of such an offer is very important to Rule 238, because it is against this "specified sum" that the eventual recovery is judged by the courts. The very inclusion of the word "specified" should negate a need for later inquiries by a court to determine an amount offered. The requirement in the same sentence of Rule 238, that the offer be a "written offer," demonstrates the Supreme Court's desire to avoid such separate litigation as to the existence and sufficiency of any offer.[5]

Furthermore, if "specified sum" were read loosely to require a court to inquire into the actual sum of

---

5. This court is fully aware that Rule 238 permits a hearing to determine issues of fact. Pa.R.C.P. 238(c)(1). Nevertheless, the Supreme Court of Pennsylvania added the discretionary hearing option to "resolve issues of fact in the determination of fault," Pa.R.C.P. 238, explanatory comment (1988), and thereby avoid due process violations. *See Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 66, 515 A.2d 1350, 1353 (1986) (suspending prior delay damage rule due in part to due process violations and setting forth criteria to be used by fact finder in determining fault under new rule). The option was not added to provide defendants with a forum to explain the meaning of their offers. Although the rule allows a court to consider whether a written offer of a structured settlement constitutes an offer within the terms of the rule, Pa.R.C.P. 238(b)(1)(ii), such an inquiry is extremely specialized and irrelevant to the present issue.

$46,000 plus "out-of-pocket expenses," such a required reading would contradict one of Rule 238's enumerated purposes: "to alleviate delay in the courts." See Pa.R.C.P. 238, explanatory comment (1988). First, few, if any, plaintiffs will accept an offer unless certain of the exact amount being offered, and, therefore, such a liberal interpretation does not promote settlements in any way. Secondly, supplemental judicial inquiries into the values of ambiguous offers only add more litigation to the court system and delay other cases awaiting trial.

There is an additional reason for the "specific sum" wording to be read strictly. If required to interpret ambiguous offers following jury verdicts, courts will have to base such interpretations on an inherently unfair arbitrary standard, choosing either party's viewpoint at the expense of the other. For example, assume that the proper standard were to look to the plaintiff's view of the amount of an offer. Under such standard, assume further that an ambiguous offer was made by defendant who meant such offer to equal $90,000, while the plaintiff believed such offer to only amount to $70,000. When a verdict of $100,000 is awarded, the ambiguous offer will be judged from plaintiff's view, and found to have been below 80 percent of the verdict and too low to forestall further delay damages. The defense will be harmed by having to pay delay damages even though they offered an amount that they believed to be, and which proved to be, an adequate offer. Equal harm often would come to plaintiffs if defendants' views of offers were used as the proper standard. For example, using the assumed facts set forth above, plaintiff would not be awarded delay damages after rejecting an offer,

the amount of which was believed to be, and which proved to be inadequate.

Therefore, in accordance with the common and approved usage of the language of Rule 238, in light of the rule's underlying purposes, and mindful of the potential inequities inherent in any interpretation of an ambiguous offer, "specific sum" should be read strictly to mean a precise monetary amount. In turn, defendant's highest written offer of $46,000 plus "plaintiffs' out-of-pocket-expenses" does not amount to a "specific sum," and delay damages properly were imposed beyond November 10, 1989, and up to April 18, 1991, when the verdict was returned in plaintiffs' favor.

## CONCLUSION

As discussed above, all of defendant's arguments against imposition of delay damages were properly denied. Therefore, in accordance with Rule 238, the plaintiffs' verdicts were molded to incorporate delay damages from July 28, 1986, through April 18, 1991.